855 F.2d 1353
 26 Fed. R. Evid. Serv. 1069
 UNITED STATES of America, Appellee,
v.
Dale BAKER, Appellant.
UNITED STATES of America, Appellee,
v.
Carnell MILLER, Appellant.
UNITED STATES of America, Appellee,
v.
Ervin JACKSON, Appellant.
UNITED STATES of America, Appellee,
v.
Virlin JACKSON, Appellant.
UNITED STATES of America, Appellee,
v.
Michael PETTY, Appellant.
UNITED STATES of America, Appellee,
v.
Vincent BEAUREGARD, Appellant.
UNITED STATES of America, Appellee,
v.
Frank NOBLE, Appellant.
 Nos. 86-2082, 86-2083, 86-2111, 86-2112, 86-2115, 86-2199
and 86-2257.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1987.
Decided Sept. 2, 1988.
Rehearing Denied in Nos. 86-2082, 86-2083, 86-2111, 86-2115,
86-2199 Oct. 19, 1988.
 
 Cheryl A. Callis, St. Louis, Mo., for appellant Baker.
 Paul J. Passanante, St. Louis, Mo., for appellant Carnell Miller.
 Ian P. Cooper, St. Louis, Mo., for appellant Michael Petty.
 Thomas Magee, St. Louis, Mo., for appellant Virlin Jackson.
 Robert L. Devereux, St. Louis, Mo., for appellant Ervin Jackson.
 R. Thomas Day, Jefferson City, Mo., for appellant Vincent Beauregard.
 Michael K. Fagan, Asst. U.S. Atty., St. Louis, Mo., for appellee.
 Before JOHN R. GIBSON, FAGG, and WOLLMAN, Circuit Judges.
 FAGG, Circuit Judge.
 
 
 1
 After a joint criminal trial, a jury found all seven defendants guilty of conspiring to distribute a controlled substance in violation of 21 U.S.C. Sec. 846. In addition to their conspiracy convictions, Frank Noble and Carnell Miller were convicted of substantive offenses. The jury found Noble guilty of illegally transporting firearms in interstate commerce, 18 U.S.C. Sec. 922(a)(5). Miller was found guilty of being a felon in possession of a firearm, 18 U.S.C. app. Sec. 1202(a)(1) (1982 & Supp.1984) (repealed 1986), and of possessing a controlled substance with intent to distribute, 21 U.S.C. Sec. 841(a)(1). Further, Miller was required to forfeit the proceeds of his criminal conduct. All of the defendants appeal, and we affirm.
 
 
 2
 For over a decade, Miller and the other defendants engaged in a large-scale drug operation in north St. Louis. Miller ran this operation from several houses he owned in the area. The other defendants performed various functions in the drug conspiracy: providing the methamphetamine or other drugs; delivering these drugs to Miller's houses; participating in the later sale and distribution of the drugs from the houses Miller owned; and protecting the operation from detection or destruction.
 
 
 3
 Over the years, law enforcement officials executed search warrants for the various houses and recovered drugs from those houses. Miller, however, was able to move his operation to other locations, and thus, the conspiracy continued until police arrested Miller in 1985. These criminal proceedings followed. We now turn to address the defendants' numerous arguments for reversal of their convictions.
 
 I. Proof of the Conspiracy
 
 4
 A. Single Conspiracy Versus Multiple Conspiracies
 
 
 5
 The defendants contend the evidence established multiple conspiracies when only a single conspiracy was charged and that they were prejudiced by this variance. The defendants also argue the district court committed error by refusing to instruct the jury on multiple conspiracies. In determining whether the evidence established a single conspiracy or multiple conspiracies, we view the evidence in the light most favorable to upholding the jury verdict. See United States v. Lee, 782 F.2d 133, 134 (8th Cir.1986); United States v. Towers, 775 F.2d 184, 189 (7th Cir.1985). We must decide whether the record contained evidence from which the jury could have found one overall agreement to commit an illegal act--here, the distribution of drugs. See Lee, 782 F.2d at 134.
 
 
 6
 According to the defendants, the testimony of Frank Noble's nephew, DeWitt, established a conspiracy separate from the single conspiracy charged. Noble, the supplier for Miller's drug operation, furnished DeWitt with drugs for sale and distribution. DeWitt then sold the drugs from a house owned by Noble. DeWitt eventually stopped selling drugs, and Noble sold the house to Miller.
 
 
 7
 The defendants stress that DeWitt was unable to identify Miller at the trial and may not have known the other defendants with the exception of Noble. Nevertheless, DeWitt was aware of Miller and did not have to be personally acquainted with Miller or the other defendants in order to participate in the single conspiracy. See United States v. Massa, 740 F.2d 629, 636 (8th Cir.1984), cert. denied, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); United States v. Brewer, 630 F.2d 795, 799-800 (10th Cir.1980). We have carefully considered the record, and we conclude that Noble and DeWitt were not involved in a conspiracy separate from the single conspiracy charged.
 
 
 8
 The defendants also argue that separate and distinct conspiracies were established by the early criminal activities of Miller and Vincent Beauregard. At the trial, the Government introduced evidence of Miller's drug-related activities in the late 1960s, which included several arrests. Additionally, the Government presented evidence that in late 1969 and early 1970 police twice investigated a St. Louis residence for narcotics. Beauregard was present and arrested both times. The record, however, contains no evidence to show these activities constituted separate conspiracies. Rather, the incidents were only isolated criminal acts that were unrelated to each other.
 
 
 9
 Finally, Noble and Beauregard contend the evidence established separate conspiracies between Miller and each of them. We disagree. Noble, as the supplier to this large operation, and Beauregard, as a member of Miller's selling entourage, knowingly contributed to the single, ongoing drug conspiracy. See Massa, 740 F.2d at 636; see also Brewer, 630 F.2d at 799-800. The evidence does not support a finding of separate conspiracies here.
 
 
 10
 Although various defendants entered the conspiracy at different times and performed different functions, the conspiracy had one criminal objective: to sell large quantities of methamphetamine or other drugs. This type of enterprise, by its very nature, is a loosely knit organization, Brewer, 630 F.2d at 799, and a jury may find a defendant guilty of conspiracy even if that defendant plays only a "minor role in the total scheme," United States v. Lee, 743 F.2d 1240, 1250 (8th Cir.1984). The evidence established a single conspiracy, and thus, the district court did not commit error by refusing to give a multiple conspiracy instruction. See United States v. Kirk, 534 F.2d 1262, 1269 (8th Cir.1976), cert. denied, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091, 430 U.S. 906, 97 S.Ct. 1174, 51 L.Ed.2d 581 (1977); see also Towers, 775 F.2d at 189.
 
 
 11
 Similarly, because the evidence established a single conspiracy, we conclude the district court did not abuse its discretion by denying the defendants' motions to sever. In general, the individuals " 'charged in a conspiracy should be tried together, particularly whe[n] proof of the charges against the defendants is based upon the same evidence and acts.' " United States v. Garcia, 785 F.2d 214, 220 (8th Cir.) (quoting Lee, 743 F.2d at 1248), cert. denied, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). Although several defendants claim the evidence against them was slight compared to the evidence against the other defendants, "the [d]istrict [c]ourt was not required to sever defendants * * * simply because the evidence may have been more damaging against one [defendant] than the others." Id.
 
 B. Other Crimes Evidence
 
 12
 The defendants argue the Government's introduction of earlier criminal acts by Beauregard and Miller constituted other crimes evidence and thus violated Federal Rule of Evidence 404(b). We need not decide whether these criminal acts were properly admitted because we conclude that any error in admitting this evidence was harmless. See United States v. Nichols, 808 F.2d 660, 663 (8th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987).
 
 
 13
 We do not believe the defendants have been prejudiced. First, only Miller and Beauregard were involved in these criminal activities. Because none of the other defendants was implicated, the jury could have easily separated this evidence to reflect only on Miller and Beauregard. Second, the record contained evidence clearly connecting Miller and Beauregard to the drug conspriacy. Thus, the impact of these earlier acts was minimal. See United States v. O'Connell, 841 F.2d 1408, 1423 (8th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988). Finally, the strong evidence against all of the defendants convinces us that the jury's verdict was not affected by these isolated criminal acts. See Nichols, 808 F.2d at 663-64.
 
 
 14
 Several defendants assert the district court committed error in admitting evidence that murder and assault occurred during the course of the conspiracy. In addition, Noble challenges the Government's introduction of a 1979 arrest in which he was found in possession of a pistol and drugs. The Government responds by arguing that these matters were admissible as evidence of the conspiracy. We agree.
 
 
 15
 The district court has "particularly broad discretion" in determining the evidence to be admitted at a conspiracy trial. United States v. Apker, 705 F.2d 293, 298 (8th Cir.1983) (rehearing en banc on other limited grounds, United States v. Fitzgerald, 724 F.2d 633, 634-35 (8th Cir.1983), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984)), cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). Here, the evidence was relevant to the operation of this ongoing conspiracy. See, e.g., United States v. Cintolo, 818 F.2d 980, 997-98 (1st Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987); United States v. Bueno-Risquet, 799 F.2d 804, 813-14 (2d Cir.1986); United States v. Markowski, 772 F.2d 358, 366 (7th Cir.1985), cert. denied, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986). Thus, the district court did not abuse its discretion by admitting the evidence.
 
 
 16
 Noble and Beauregard contend the district court committed error by admitting evidence that these defendants failed to report all of their income on their tax returns. We conclude the district court did not abuse its discretion. This evidence showed the defendants' expenditures exceeded their reported earnings and was relevant to establishing that the unreported income was probably derived from illegal activities. See United States v. Dazzo, 672 F.2d 284, 289 (2d Cir.), cert. denied, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982).
 
 
 17
 C. Coconspirator's Statements and the Sufficiency of the Evidence
 
 
 18
 Noble asserts the district court committed error by allowing two Government witnesses to testify that Miller said Noble had supplied the methamphetamine to the drug operation. The district court admitted this testimony under the coconspirator's exception to the hearsay rule. See Fed.R.Evid. 801(d)(2)(E). Noble further argues that independent of the coconspirator's statements the evidence was insufficient to establish his participation in the conspiracy. We find Noble's arguments frivolous.
 
 
 19
 Before admitting the statements under Federal Rule of Evidence 801(d)(2)(E), the district court had to determine by a preponderance of the evidence that a conspiracy involving Miller and Noble existed and that Miller made the challenged statements "during the course and in furtherance of the conspiracy," id. See Bourjaily v. United States, --- U.S. ----, ----, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). In doing so, the court could consider the challenged statements. See id. at ----, 107 S.Ct. at 2781; United States v. Cerone, 830 F.2d 938, 948 (8th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988). After reviewing the record, including the challenged statements, we conclude the district court did not abuse its discretion by admitting the statements.
 
 
 20
 In addition to Noble, various other defendants challenge the sufficiency of the evidence to connect them to the conspiracy. Viewing the evidence in the light most favorable to the Government, United States v. O'Connell, 841 F.2d 1408, 1424 (8th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), we find the evidence more than sufficient to establish each defendant's participation in the conspiracy.
 
 II. Other Evidentiary Challenges
 A. The Trash Exhibits
 
 21
 The defendants next argue the district court abused its discretion by admitting into evidence items collected from the trash at one of Miller's houses. We disagree.
 
 
 22
 Lieutenant Webb of the St. Louis Police Department testified that, as part of an ongoing investigation of Miller's drug trafficking activities, trash collectors delivered the trash from Miller's house to Webb. According to Webb, the trash was delivered to him in large plastic trash bags from the front seat of the truck one block away from Miller's residence. Other than a single hearsay objection that was overruled, defense counsel did not object to Webb's testimony.
 
 
 23
 While Webb was testifying, he handled and described the trash exhibits, which included receipts, bills, notes, envelopes, syringes, and tinfoil. The trash exhibits were also in the jury's view. When the Government moved to admit the exhibits into evidence at the end of Webb's testimony, the defendants objected that "there's been no adequate foundation, no showing. Authenticity."
 
 
 24
 On appeal, the defendants contend the Government failed to lay a proper foundation or to authenticate this evidence for admission because the trash collectors who actually picked up the trash did not testify. Basically, the defendants claim there was not a sufficient showing this evidence was connected to the defendants. In considering their contentions, we recognize that at trial the defendants did not make the specific grounds of their objection known. Thus, they may have failed to preserve this issue on appeal. See United States v. Doddington, 822 F.2d 818, 823 n. 3 (8th Cir.1987); United States v. Wagoner, 713 F.2d 1371, 1377 (8th Cir.1983). Regardless, we find no merit to their argument.
 
 
 25
 Authentication can often be established by the "contents * * * or other distinctive characteristics * * * [of the challenged evidence when] taken in conjunction with [the] circumstances." Fed.R.Evid. 901(b)(4); see United States v. Helmel, 769 F.2d 1306, 1312 (8th Cir.1985). Here, all of the exhibits introduced into evidence were retrieved from large plastic trash bags, and some of the exhibits, such as bills, notes, and receipts, contained distinctive characteristics linking these items to the defendants. Some of the items contained Miller's address. See United States v. Reyes, 798 F.2d 380, 383 (10th Cir.1986) (The contents of notes to members of the conspiracy provided the basis for their admissibility.); United States v. Wilson, 532 F.2d 641, 644-45 (8th Cir.), cert. denied, 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). Further, Lieutenant Webb testified without objection that the trash came from Miller's house. Under these circumstances, we conclude the district court did not abuse its discretion by admitting these exhibits into evidence.
 
 B. The Laboratory Reports
 
 26
 The defendants contend the district court committed error by admitting into evidence several laboratory reports that identified controlled substances connected to the defendants. We disagree.
 
 
 27
 When made on a routine basis, laboratory analyses of controlled substances are admissible as business records under Federal Rule of Evidence 803(6). See United States v. Scholle, 553 F.2d 1109, 1124 & n. 4 (8th Cir.) (The court referred to the business records exception then contained in the Federal Business Records Act, 28 U.S.C. Sec. 1732(a) (1970); that exception is now contained in Federal Rule of Evidence 803(6).), cert. denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); see also United States v. Parker, 491 F.2d 517, 520-21 (8th Cir.1973). Here, the St. Louis Police Department Laboratory made these reports in the ordinary course of its business and kept the records under its care, custody, and control. The defendants do not challenge the reliability of these reports; nor do they claim the reports were made on other than a routine basis. We conclude the district court properly admitted the reports.
 
 
 28
 The defendants' also maintain that the admission of the laboratory reports violated their rights under the confrontation clause of the sixth amendment. We disagree. Firmly rooted exceptions to the hearsay rule do not violate the confrontation clause. See Bourjaily v. United States, --- U.S. ----, ----, 107 S.Ct. 2775, 2782-83, 97 L.Ed.2d 144 (1987); Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). When admitting the laboratory reports under the business records exception, the district court acted under a firmly rooted exception. Roberts, 448 U.S. at 66 n. 8, 100 S.Ct. at 2539 n. 8; United States v. Miller, 830 F.2d 1073, 1077 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988).
 
 III. The Batson Issue
 
 29
 The defendants assert the district court did not follow the requirements of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in upholding several of the Government's peremptory challenges against black members of the jury panel. After the Government exercised its peremptory challenges to remove six black jurors from the jury panel, the defendants objected to the challenges. The district court then ordered the Government to state racially neutral reasons for the challenges. See id. at 97, 106 S.Ct. at 1723; United States v. Battle, 836 F.2d 1084, 1085 (8th Cir.1987).
 
 
 30
 After hearing the Government's reasons for its peremptory challenges, the district court allowed only one of the challenges. With respect to the other five challenges, the court indicated the Government's reasons were insufficient. The Government then gave more reasons, and the district court allowed two additional challenges.
 
 
 31
 We are satisfied that the Government stated racially neutral reasons to support the three preemptory challenges upheld by the district court. The defendants, however, argue that after the Government initially stated its reasons for the challenges, the district court could not consider additional reasons in support of the Government's challenges. Thus, the defendants are essentially asking this court to specify the precise manner in which the district court may hear the Government's presentation of the reasons for its peremptory challenges. The Supreme Court has declined to do so, Batson, 476 U.S. at 99 & n. 24, 106 S.Ct. at 1724 & n. 24, and so do we.
 
 
 32
 When making a Batson inquiry, the district court must determine whether the Government has "articulate[d] a neutral explanation [for the exercise of its peremptory challenges that is] related to the particular case to be tried." Id. at 98, 106 S.Ct. at 1723. In receiving the Government's explanation for its challenges, "the district court [is] entitled to hear from the Government under whatever circumstances the district court [feels are] appropriate." United States v. Davis, 809 F.2d 1194, 1202 (6th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 3234, 3235, 97 L.Ed.2d 740 (1987). Here, the district court did not abuse its discretion by the method the court used to make the Batson determination. Rather, the district court sought only to fulfill its obligation to determine whether the Government had racially neutral reasons for its peremptory challenges. We find no error.
 
 IV. The Newspaper Article
 
 33
 The defendants argue the district court abused its discretion in refusing to voir dire each juror individually about a newspaper article. Approximately two weeks before the end of the trial, a newspaper article appeared in the St. Louis Post-Dispatch entitled "For the Prosecution." The article quoted the United States Attorney as stating that defense attorneys are "up there [ninety-eight] percent of the time in effect misleading the jury. Anybody who has followed the court system knows that's what they are doing. I just don't believe I could do that."
 
 
 34
 The defendants requested that the district court question each juror individually to determine whether any juror had read the article. The district court declined to do so, but did question the jury collectively regarding whether any juror had read any articles in the newspaper to cause that juror "to have some feeling about this case in any way or another." The jury's response indicated that no member had read that kind of an article. The district court then admonished the jury to ignore any newspaper articles that could affect their judgment on this case.
 
 
 35
 On appeal, the defendants do not argue the newspaper article deprived them of a fair trial. Rather, the defendants contend the court's failure to voir dire each juror individually deprived them of a fair trial. We disagree.
 
 
 36
 We immediately recognize that the statement by the United States Attorney was ill-advised. This court is concerned with the recent tendency of some prosecutors to edge toward overreaching their role in the adversary process by letting " 'zeal [outrun] discretion.' " United States v. Dougherty, 810 F.2d 763, 767 (8th Cir.1987) (quoting United States v. Killian, 524 F.2d 1268, 1274 (5th Cir.1975), cert. denied, 425 U.S. 935, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976)); see United States v. Eder, 836 F.2d 1145, 1149 (8th Cir.1988). Nevertheless, the district court has broad discretion in determining the prejudicial effect on the jury of newspaper articles that are published during a criminal trial. See United States v. Krevsky, 741 F.2d 1090, 1093 (8th Cir.1984); United States v. Williams, 604 F.2d 1102, 1114 (8th Cir.1979). We must decide whether the district court abused that discretion by refusing to voir dire each juror individually to determine if the article had a prejudicial effect.
 
 
 37
 Significantly, the article in question did not refer to any of the defendants or to this trial. See Williams, 604 F.2d at 1114-15. The district court was in the best position to measure the prejudicial effect, if any, of the article on the jurors, see United States v. Gaggi, 811 F.2d 47, 53 (2d Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 3214, 3233, 96 L.Ed.2d 701, 97 L.Ed.2d 739 (1987), and the court had discretion in how it did so. After a thorough review of the record, we conclude the district court did not abuse its discretion by refusing to voir dire each juror individually.
 
 V. Prosecutorial Misconduct
 
 38
 Miller and Noble assert that prosecutorial misconduct occurred during the trial, requiring a reversal of their convictions. Miller and Noble, however, may have failed to preserve many of their arguments for other than plain error review. We turn to address their contentions.
 
 A. Miller's Contentions
 
 39
 During opening statement, the prosecutor indicated that after Miller was arrested Miller retained the services of "the attorney [he] had provided for his minions." The Government also introduced as an exhibit a letter that contained the name and address of the law firm where Miller's attorney was employed. Counsel failed to object to either occurrence, and thus, we consider Miller's contention under the plain error rule. See United States v. O'Connell, 841 F.2d 1408, 1429 (8th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988). After review, we find no basis for reversal.
 
 
 40
 Miller next contends two other instances of misconduct occurred during the questioning of Government witnesses. While stating the names listed in Miller's personal notebook, a witness revealed the first name of Miller's trial counsel and his telephone numbers. Further, in response to a question by the prosecutor regarding what Miller did while out on bond, another witness indicated that Miller sold drugs in order to pay his attorney's fees. Defense counsel objected in both instances.
 
 
 41
 We find no reversible error. First, we do not believe the evidence implicated Miller's trial attorney as the one hired to represent other members of the conspiracy, and contrary to Miller's claim, his counsel was not identified as a member of the conspiracy. Counsel's very presence at the trial indicated to the jury that Miller had previously contacted counsel to represent him. Thus, it cannot be deemed prejudicial for the jury to have known Miller had counsel's name and telephone numbers in his notebook.
 
 
 42
 Second, with regard to the statement about Miller's efforts to pay his legal fees, the witness did not indicate counsel asked or suggested that Miller engage in selling drugs. The statement referred only to Miller's conduct and not to that of his counsel. In addition, the court sustained counsel's objection and promptly instructed the jury to disregard the statement.
 
 B. Noble's Contentions
 
 43
 Noble first contends that in closing argument the prosecutor improperly shifted the burden of proof. We disagree.
 
 
 44
 We note that Noble failed to object to several of the prosecutor's statements that he now challenges on appeal. In any event, Noble's contentions are meritless. Noble testified on his own behalf, and in closing argument, the prosecutor indicated that nothing in the record supported Noble's testimony. The prosecutor's statement constituted a permissible comment on the witness' testimony. Further, the jury was instructed that closing arguments were not evidence in the case and that the burden of proof remained on the Government.
 
 
 45
 Noble next argues the prosecutor undermined the integrity of his trial counsel and denied him the right to a fair trial. Noble points to several disputed occurrences during the trial, but failed to object in many of those instances. We find no plain or reversible error.
 
 
 46
 During closing argument, the prosecutor made a statement regarding trial counsel's integrity, and Noble's counsel objected. The district court provided the relief Noble requested by sustaining the objection and admonishing the jury to disregard the statement. Noble requested no further relief. On appeal, Noble contends the district court's action "was too little and too late." Because Noble failed to request other relief in the district court, we review his contention on appeal under the plain error standard. See Fed.R.Crim.P. 52(b); see also O'Connell, 841 F.2d at 1429. Having thoroughly reviewed the record, we conclude the prosecutor's remarks did not cause a miscarriage of justice and thus provide no basis for reversal. See United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).
 
 C. Summary
 
 47
 We note that in considering both defendants' assertions of prosecutorial misconduct our ultimate determination is whether the challenged conduct, even if improper, so prejudiced the defense that these defendants were denied a fair trial. See United States v. Rogers, 850 F.2d 435, 437 (8th Cir.1988); O'Connell, 841 F.2d at 1429. After a thorough review of the record, which contains strong evidence against both defendants, we conclude the defendants were given a fair trial.
 
 
 48
 Notwithstanding this conclusion, we believe these episodes are illustrative of a prosecutor's inability to cap his zeal with measured discretion. Why does a prosecutor solicit reversible error by taking unnecessary risks? The question is not ours to answer; thus, "we remain mystified over why prosecutors with strong evidentiary cases continue to overreach their role in the adversary process." United States v. Eder, 836 F.2d 1145, 1149 (8th Cir.1988).
 
 VI. Conclusion
 
 49
 In this case, counsel for the defendants performed diligiently. Although counsel provided worthy defenses for their clients, the jury chose to disagree. We compliment counsel for their efforts.
 
 
 50
 We have carefully considered all of the defendants' arguments, and we find no basis for reversal. Accordingly, we affirm.