UNITED STATES of America, Appellee,

v.

David MENDOZA, Jr., Gerardo Garcia, Luis Pompilio Palacio, and Fabio Ramirez–Salazar, Appellants.

Nos. 88–1537, 88–1538, 88–1560 and 88–1561.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1988.

Decided May 31, 1989.

Lee Lawless, St. Louis, Mo., for Mendoza.

Mary Ott, St. Louis, Mo., for Ramirez–Salazar.

Bradley Dede, St. Louis, Mo., for Pompilio Palacio.

Lois Drossmann, St. Louis, Mo., for Garcia.

Fred Dana, St. Louis, Mo., for U.S.

Before FAGG and WOLLMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Appellants raise numerous issues individually and jointly challenging their sentences and convictions under the federal laws prohibiting the possession and distribution of controlled substances. For the reasons that follow we affirm the judgments of conviction and sentences imposed by the district court.[1]

## I. BACKGROUND

Appellants were charged in a three count indictment. Count I charged David Mendoza, Jr., Gerardo Garcia, Luis Pompilio Palacio, Fabio Ramirez–Salazar, and David Arguelles with conspiracy to possess with intent to distribute and conspiracy to distribute cocaine. Mendoza and Arguelles were charged with possession with intent to distribute cocaine in Count II and Count III charged them with distribution of cocaine. Mendoza and Arguelles plead guilty to all three counts in the indictment. The remaining appellants, Garcia, Ramirez–Salazar, and Palacio, were tried before a jury and convicted on Count I.

Mendoza was sentenced on each of his three convictions to terms of fifteen years imprisonment. In addition, Mendoza's incarceration under Counts II and III is to be followed by four years of supervised release; all of the sentences are to run concurrently. Arguelles was sentenced to concurrent terms of seven years for his convictions under Counts I, II, and III.[2] Arguelle's incarceration under Counts II and III is to be followed by a four year term of supervised release.

Garcia, Ramirez–Salazar, and Palacio were also convicted under Count I, and sentenced to imprisonment terms of thirty years, twenty-five years, and fifteen years

respectively. Appellants now appeal raising numerous issues. Some of the issues raised are unique to individual appellants, while others involve several of the appellants. We will discuss additional facts as warranted by the issues discussed.

## II. DISCUSSION

### A. Cruel and Unusual Punishment

■ The first issue concerns the fifteen year sentence the district court imposed on appellant Mendoza.[3] Mendoza argues that because he suffers from chronic kidney failure and his life expectancy is substantially shorter than normal his fifteen year sentence is in effect a life sentence and that it constitutes cruel and unusual punishment in violation of the Eighth Amendment. It is well settled that a sentence within the range provided by statute is generally not reviewable by an appellate court. *United States v. Richard (Black Bear)*, 872 F.2d 253, 255 (8th Cir.1989). Furthermore, such a sentence which falls within the range prescribed by statute has never been found to be an Eighth Amendment violation. *See, e.g., Hutto v. Davis*, 454 U.S. 370, 372, 102 S.Ct. 703, 704, 70 L.Ed.2d 556 (1982). We do not believe that this case is an exception to these rules. While we sympathize with Mendoza's plight we do not believe that his sentence violates the Eighth Amendment. *See, e.g., United States ex rel. Villa v. Fairman*, 810 F.2d 715, 717–18 (7th Cir.1987) ("No doctrine excuses quadriplegics from punishment that is otherwise appropriate. The contention that quadriplegia is 'punishment enough'—like the parricide's claim that he deserves mercy as an orphan—is one addressed to the sentencing court's discretion alone.").

This is not a case where Mendoza is challenging his sentence because he will be unable to receive adequate medical treatment in prison. Indeed, Mendoza is likely

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Western and Eastern Districts of Missouri.

2. Arguelles is not a party in this consolidated appeal.

3. Mendoza was not sentenced under the sentencing guidelines.

to receive better care for his condition during his term of incarceration than he would receive on the outside. Accordingly, we reject Mendoza's Eighth Amendment claim.

### B. Constitutionality of the Minimum Mandatory Penalties

■ Mendoza and Ramirez–Salazar claim that they were deprived of due process and equal protection because 21 U.S.C. § 841(b)(1) differentiates punishment based on the quantity of drugs possessed without regard to the quality or purity of the drugs. Appellants argue that the minimum mandatory penalties violate due process because they have no rational relationship to the purpose of the penalties. The penalties were designed to provide greater punishment to larger scale drug dealers and manufacturers. Appellants, however, argue that without considering purity of the drug possessed a small time street dealer with a quantity of a drug which has been cut several times may receive a sentence greater than a manufacturer possessing a smaller but purer quantity of the same drug.

This same argument was rejected by the Ninth Circuit in *United States v. Savinovich*, 845 F.2d 834, 838–39 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). The Ninth Circuit noted that "[t]he classification scheme's focus on quantity is thus directly related to Congress' desire to prevent both wholesale and retail distribution of illegal drugs." *United States v. Savinovich,* 845 F.2d at 839. Therefore the mandatory punishments were not found to be unreasonable or irrational. *See also United States v. Kidder,* 869 F.2d 1328, 1333–35 (9th Cir.1989) (minimum mandatory sentences do not violate due process, equal protection, or ban on cruel and unusual punishments); *United States v. Whitehead,* 849 F.2d 849, 858–60 (4th Cir.) (same), *cert. denied,* — U.S. —, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); *United States v. Holmes,* 838 F.2d 1175, 1177–78 (11th Cir.) (same), *cert. denied,* — U.S. —, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988).

■ We agree with the Ninth Circuit's analysis of this issue and thus conclude that the minimum mandatory sentencing does not violate any of the asserted appellants' rights protected under the United States Constitution. Appellants also argue that the minimum mandatory penalties violate the Eighth Amendment's ban on cruel and unusual punishments. We find this argument to be without merit.

### C. Single Conspiracy versus Multiple Conspiracies

■ Appellants Garcia, Palacio, and Ramirez–Salazar argue that the evidence at trial established multiple conspiracies rather than a single conspiracy.

In order to evaluate the appellants' claim it is necessary to elaborate on the facts as they were developed at trial. Reviewing the evidence in the light most favorable to the government, the facts show that a Federal Drug Task Force Detective, Joseph Spiess, flew to California to enter preliminary negotiations with Mendoza and other unindicted persons for the sale of one kilogram of heroin and up to ten kilograms of cocaine. These negotiations set the price of a kilogram of heroin at $300,000. However, Mendoza later informed Detective Spiess that he was unable to complete the heroin deal. Negotiations then continued for the delivery of the ten kilograms of cocaine. The finalized deal provided that Mendoza would deliver an initial four kilograms of cocaine and if that delivery was successful a subsequent delivery of ten additional kilos would follow. Detective Spiess learned that Mendoza and another individual, later identified as Arguelles, were traveling from Los Angeles to St. Louis on an Amtrak train and they had the four kilos of cocaine in their possession. Two other detectives boarded the same Amtrak train when it stopped in Jefferson City, Missouri. Mendoza and his traveling companion were observed on the train by the two detectives who boarded the train in Jefferson City. When the train arrived in St. Louis on December 24, 1986, Detective Spiess met with Mendoza and Arguelles. The three went to Spiess's undercover van and once inside Mendoza and Arguelles

each produced two kilos of cocaine. Further discussions transpired between Spiess and Mendoza concerning the delivery of the ten additional kilos of cocaine. Mendoza and Arguelles were then arrested.

Prior to the December 24, 1986, cocaine transaction, Mendoza and John Ybarra[4] met with Ramirez–Salazar and Palacio to discuss the price of the cocaine. They agreed that the price of the cocaine would be $23,000 a kilo to Mendoza and to Spiess the price would be $30,000 a kilo. After this meeting, Palacio delivered four kilograms of cocaine to Mendoza.

After learning of Mendoza's arrest in St. Louis, Ybarra turned himself in to local authorities in California. Ybarra then met with a DEA agent and he agreed to cooperate with DEA authorities. In early January, 1987, Ramirez–Salazar called Ybarra to find out what had happened to Mendoza. Ybarra explained that Mendoza was arrested in St. Louis. Ybarra then met with Ramirez–Salazar in late January and expressed his desire to work with Ramirez–Salazar in future deals. In subsequent meetings with Ramirez–Salazar, Ybarra continued to discuss the possibility of a future cocaine deal. Ybarra was also introduced to Garcia.

In early April, Ramirez–Salazar and Garcia met with Ybarra and two undercover officers to discuss the purchase of ten kilos of cocaine. They agreed to deliver three kilos initially and if that delivery was successful then the remaining seven kilos would be delivered. Palacio, who made the delivery to Mendoza in December 1987, was to make the delivery.

Ramirez–Salazar, Garcia, Ybarra, and the two undercover officers then went to the nearby location where the delivery was to take place. They had dinner and then Ramirez–Salazar and Garcia departed explaining that the delivery should take place in one hour. Palacio arrived with the cocaine in a shopping bag and it was inspected by one of the undercover officers. Palacio was then arrested and the three kilos of

cocaine were seized. A search of the delivery car produced $15,020 in U.S. currency. Officers searched Palacio and found a set of car keys for a Toyota Supra which he was observed driving prior to his arrest. A search of the Toyota produced seven packages of cocaine.

Ramirez–Salazar and Garcia were subsequently arrested. After receiving consent to search from Ramirez–Salazar, officers searched a residence at 1301 Greenwood in Los Angeles County. The search produced a calendar containing "pays" and "owes" for narcotics transactions and a triple beam scale commonly used by drug traffickers. After receiving consent from Garcia to search his residence, authorities seized a bottle of inositol which is commonly used to "cut" or dilute cocaine. Also seized from Garcia's residence was $7,400 in U.S. currency and cards containing "pays" and "owes".

Based on this evidence we have absolutely no difficulty with concluding that Ramirez–Salazar, Garcia, and Palacio were involved in one conspiracy to distribute cocaine. The applicable standard for determining whether the government has proved a single conspiracy versus multiple conspiracies is whether the record contains evidence "from which the jury could have found one overall agreement to commit an illegal act—here, the distribution of drugs." *United States v. Baker*, 855 F.2d 1353, 1356 (8th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989). In making this determination, "we view the evidence in the light most favorable to upholding the jury verdict." *Id.* We also note that a "conspirator need not know all of the other conspirators or be aware of all the details of the conspiracy, so long as the evidence is sufficient to show knowing contribution to the furtherance of the conspiracy." *United States v. Massa*, 740 F.2d 629, 636 (8th Cir.1984), *cert. denied*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985).

**4.** Ybarra became a government witness and provided valuable information that led to the arrest of Mendoza and Arguelles.

From the evidence established in the instant case it is clear that Ramirez–Salazar, Garcia, and Palacio were coconspirators. There was evidence that Garcia was the owner of the four kilos of cocaine delivered to Mendoza in December 1987. Ramirez–Salazar was the primary negotiator for the December 1987 drug transaction with Mendoza. In addition, Garcia and Ramirez–Salazar both were involved in negotiating the transaction that led to their arrests. There is also sufficient evidence to conclude that Palacio was a member of the conspiracy and furthered the conspiracy by serving as the drug courier. Palacio delivered the drugs which concluded the transaction with Mendoza and he also delivered the drugs in the transaction that led to his arrest. *See United States v. Baker*, 855 F.2d at 1357 ("Although various defendants entered the conspiracy at different times and performed different functions, the conspiracy had one criminal objective: to sell large quanitities of methamphetamine or other drugs."). Accordingly, we reject appellants' argument that the government failed to prove a single conspiracy.

### D. Denial of Ramirez–Salazar and Palacio's Motions to Sever

Our finding that the evidence established a single conspiracy in this case forecloses the next argument raised on appeal. *See United States v. Massa*, 740 F.2d at 644. Appellants Ramirez–Salazar and Palacio argue that the district court erred in denying their motions for severance.

We note that joinder of defendants is appropriate under Federal Rule of Criminal Procedure 8(b) "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R.Crim.P. 8(b). The defendants "may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." *Id.* It is the well-settled rule in this circuit that when all of the defendants charged in an indictment are part of a single common conspiracy joinder under Rule 8(b) is proper. *See United States v. Grey Bear*, 863 F.2d 572, 578, 585 (8th Cir.1988) (en banc) (separate statements of Chief Judge Lay and Judge John R. Gibson representing the polarized views of an equally divided court); *see also United States v. Massa*, 740 F.2d at 644.

■ Generally, there is a preference that individuals charged in a conspiracy should be tried jointly. *United States v. Baker*, 855 F.2d at 1357. This preference is founded on notions of judicial economy, especially when proof of the charges against the defendants requires proof of similar acts. *Id.* Nevertheless, if undue prejudice would result from a joint trial, the district court, in the exercise of its sound discretion, may order separate trials. The denial of a severance motion as just intimated is reviewed under the abuse of discretion standard. *United States v. Massa*, 740 F.2d at 644.

■ In the instant case we do not believe the district court erred in denying the appellants' motions to sever because their joint trial was not unduly prejudicial. Furthermore, assuming *arguendo* that the district court abused its discretion in denying the severance motions, appellants would not be entitled to relief unless they can show that they suffered compelling prejudice. *Id.* In light of the overwhelming evidence of guilt we do not believe that appellants can establish any prejudice resulting from their joint trial.

### E. Other Crimes Evidence

Ramirez–Salazar argues that the district court erred when it allowed the government to introduce evidence of a discussion between Detective Spiess and Mendoza in November 1986 concerning a proposed heroin transaction. Appellant maintains that the discussion concerning the proposed heroin transaction should have been precluded by F.R.E. 404(b) which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident.

The district court has broad discretion in ruling on the admissibility of evidence under Rule 404(b). *United States v. Paul,* 810 F.2d 774, 776 (8th Cir.1987). The district court "will be reversed only when the evidence clearly has no bearing upon any of the issues involved." *Id.*

We find this aspect of the case somewhat troubling. We note that Mendoza plead guilty to the charges against him. Thus his guilt was not an issue in the trial. Further, the remaining defendants in the trial were not implicated in the heroin transaction; thus, with respect to them the evidence was not relevant to any disputed issues.

■ Nevertheless, we need not decide whether the evidence concerning the proposed heroin transaction was properly admitted because we conclude that any error in admitting this evidence was harmless. Since the evidence did not implicate Ramirez–Salazar in the proposed heroin transaction the impact of this evidence on his guilt would have been minimal. *See, e.g., United States v. Baker,* 855 F.2d at 1358. Furthermore, we do not believe that Ramirez–Salazar was prejudiced by this evidence considering the overwhelming evidence of his guilt. Ramirez–Salazar's guilt was established through direct testimony from the agents with whom he dealt in negotiating and planning the drug transactions. The case against Ramirez–Salazar was airtight and we do not believe that admitting the evidence of the proposed heroin transaction prejudiced him in any way.

### F. Remaining Issues

In addition to the issues which we have just discussed the following issues are raised for our consideration: 1) Garcia argues that the cocaine found in the delivery car driven by Palacio was improperly seized; 2) Ramirez–Salazar argues that Government Exhibit 24, a piece of paper used to keep track of narcotics transactions, was erroneously admitted into evidence; 3) Ramirez–Salazar also argues that the district court erred when it refused his requested instruction on mere presence; 4) Garcia and Ramirez–Salazar challenge the district court's instruction on knowledge; 5) Palacio argues that Government Exhibit 53, containing mail addressed to him which was sent to a private mailbox, was erroneously admitted into evidence; and 6) Palacio argues that there was insufficient evidence to support his conviction. We have carefully reviewed each of these arguments and we find them to be without merit and further discussion unwarranted.

### III. CONCLUSION

This case is a good example of effective law enforcement. The officers investigating this case were able to infiltrate a sophisticated drug conspiracy and bring its members to justice without taking shortcuts that violate the established rights of the accused. As a result of the effectiveness of these law enforcement efforts there were few issues of substance to raise on appeal. Those issues which we do feel were significant and warranted discussion do not entitle any of the defendants to a new trial or a redetermination of their sentences. Accordingly, we affirm the conviction and sentences of each of the appellants.