**UNITED STATES of America, Appellee,**

v.

**Reginald Sinclair BUCKNER, Appellant.**

No. 89–1438.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1989.

Decided Jan. 22, 1990.

Ronald L. Wheeler, Des Moines, Iowa, for appellant.

Linda R. Reade, Des Moines, Iowa, for appellee.

Before LAY, SNEED,[*] and WOLLMAN, Circuit Judges.

SNEED, Senior Circuit Judge:

Reginald S. Buckner was convicted of possession with intent to distribute 53 grams of cocaine base[1] or "crack" in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) and was sentenced under the United States Sentencing Guidelines to 250 months in federal prison. He appeals his sentence, claiming that the "100 to 1 ratio" of cocaine to cocaine base in the Guidelines, *see* Section 2D1.1(a)(3), violates the due process clause of the Fifth Amendment and the cruel and unusual punishment clause of the Eighth Amendment. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

During August 1988, the Des Moines Police Department received several citizen complaints that Buckner and four other individuals were distributing drugs at 1321 19th Street, a residence in Des Moines. A confidential police informant also reported that Buckner, Jeanette Hayes, and at least two other individuals were distributing crack cocaine in the vicinity of that residence. The informant purchased a small amount of crack cocaine from Hayes.

---

[*] Honorable Joseph T. Sneed, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. Cocaine base or "crack" "is any form of cocaine with [a] hydroxyl radical" in the chemical compound. *United States v. Brown*, 859 F.2d 974, 975–76 (D.C.Cir.1988) (per curiam). In lay terms, "crack" is a form of cocaine that can be inhaled, goes rapidly to the brain, and for which very small dosage units are sufficient for initial uses. *See "Crack" Cocaine: Hearing Before the Permanent Subcomm. on Investigations of the Senate Comm. on Governmental Affairs*, 99th Cong., 2d Sess. 20 (1986) (statement of Robert Byck, M.D., Prof. of Psychiatry and Pharmacology, Yale University School of Medicine) [hereinafter *"Crack" Cocaine: Hearing*].

Hayes told the informant that Buckner supplied the drugs, received a majority of the proceeds, and that "employees" distributed the drugs on the street for a percentage of the profit.

On August 26, 1988, the police obtained a warrant to search the residence at 1321 19th Street. During the search, the police seized a revolver, three handguns, ammunition, a scale, two electronic beepers, over $35,000 in cash, and 29 baggies, some of which contained cocaine, and some of which contained cocaine base. Buckner arrived at the residence while the search was in progress. He later admitted that the residence and the guns found on the scene were his.

On September 22, 1988, Buckner was indicted on charges of: (1) possession with intent to distribute 53 grams of a mixture containing cocaine base; (2) possession with intent to distribute 648 grams of cocaine; and (3) possession of a firearm by a convicted felon. On October 13, 1988, he pled not guilty to each of these charges. On November 21, 1988, as part of a plea agreement, Buckner pleaded guilty to the first charge in exchange for dismissal of the other two charges.

On March 1, 1989, the district court applied the United States Sentencing Guidelines in sentencing Buckner. The quantity of drugs found at Buckner's residence led to a base offense level of 32.[2] The Guidelines direct that a person with a criminal history such as Buckner's who committed a level 32 offense be sentenced to federal prison for 210 to 262 months.[3] A prison sentence of 250 months, followed by five years of supervised release during which Buckner must perform 395 hours of community service, was imposed.

Prior to sentencing, Buckner filed two motions challenging the constitutionality of the Sentencing Guidelines. The first motion, relying on separation of powers and procedural due process grounds, was dismissed and is not on appeal before this court.[4] In the second motion, filed on February 21, 1989, Buckner claimed that the Sentencing Guidelines violated the substantive due process element of the Fifth Amendment and the cruel and unusual punishment clause of the Eighth Amendment. Specifically, he challenged the Drug Quantity and Drug Equivalency Tables incorporated into Section 2D1.1(a)(3) of the Guidelines. These tables treat one gram of cocaine base the same as one hundred grams of cocaine (hereinafter referred to as the "100 to 1 ratio") for purposes of determining sentencing levels. At the sentencing hearing on March 1, 1989, the district court rejected both of Buckner's challenges. Buckner now appeals that ruling.

Buckner contends that the "100 to 1 ratio" of cocaine to cocaine base in the Sentencing Guidelines is arbitrary and irrational and therefore offends principles of substantive due process. He points to a statement in the commentary to the Guidelines which notes that "the ratios in the Drug Equivalency Tables do not necessarily re-

---

**2.** The court adjusted Buckner's base offense level, taking into account aggravating and mitigating circumstances enumerated in the Guidelines. It added two points to Buckner's base offense level because weapons were found at the residence and subtracted two points because Buckner admitted responsibility for the offense. Although the Presentence Report recommended adding two points for Buckner's "leadership role" in the crimes charged, the court did not find the evidence sufficient to support that recommendation. Thus, the offense level ultimately used for calculating the sentence range was 32.

**3.** See *United States Sentencing Commission Guidelines Manual*, at 5.2.

**4.** On November 30, 1988, Buckner challenged the Guidelines on separation of powers grounds

(arguing that Congress unconstitutionally delegated its power) and procedural due process grounds (arguing that the Guidelines unconstitutionally restricted the availability of parole, abolished probation, and improperly weighed a defendant's criminal history). On January 19, 1989, the district court dismissed the separation of powers challenge consistent with *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). A panel of the district court dismissed the procedural due process challenge on February 10, 1989, holding that the Guidelines do not, on their face, deprive defendants of their due process rights. Both orders dealt collectively with motions filed by several defendants with similar objections to the Guidelines.

flect dosages based on pharmacological equivalents." Commentary, § 2D1.1, *United States Sentencing Commission Guidelines Manual*, at 2.41. He argues that, because there is no difference between cocaine and cocaine base,[5] there is no rational basis for distinguishing between the penalties for cocaine and cocaine base. In his Eighth Amendment challenge, Buckner insists that his 250 month prison sentence is so grossly disproportionate to an offense of possessing 53 grams of cocaine base as to constitute cruel and unusual punishment.

## II.

## DISCUSSION

Our review of federal constitutional questions is, of course, de novo. *Jenkins by Agyei v. Missouri*, 807 F.2d 657, 703 (8th Cir.1986), *cert. denied*, 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987).

### A. *Due Process Challenge*

■ In determining the sentencing *ranges* for drug offenses, the United States Sentencing Commission began with the *minimum* penalties set forth by Congress in 21 U.S.C. § 841(b) (1982 & Supp. V 1987).[6] The "100 to 1 ratio" of cocaine to cocaine base in the Guidelines is derived directly from Section 841(b), which mandates the same minimum sentence for crimes involving 50 grams or more of a substance containing cocaine base as it does for crimes involving 5,000 grams or more of ordinary cocaine. *Compare* 21 U.S.C. § 841(b)(1)(A)(iii) (1982 & Supp. V 1987) *with* § 841(b)(1)(A)(ii)(II) (1982 & Supp. V 1987). Clearly, the United States Sentencing Commission only implemented a

congressional directive set forth by statute when applying the "100 to 1 ratio" to its delineation of sentencing ranges. In *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 675, 102 L.Ed.2d 714 (1989), the Supreme Court held constitutional Congress's delegation to the Commission of the power to implement its directives in this way. Therefore, the sole question before us in deciding Buckner's substantive due process challenge is whether the decision by Congress to apply a "100 to 1 ratio" is constitutional.[7]

We review acts of Congress with considerable deference. Acts do not offend principles of substantive due process if they bear a "reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory."[8] *Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934). Appellate courts should not and do not try "to determine whether [the statute] was the correct judgment or whether it best accomplishes Congressional objectives; rather, [courts] determine [only] whether Congress' judgment was rational." *United States v. Holmes*, 838 F.2d 1175, 1178 (11th Cir.1988), *cert. denied*, 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1989); *see United States v. Mendoza*, 876 F.2d 639, 641 (8th Cir.1989).

We do not believe that requiring more severe penalties for crimes involving cocaine base than for those involving cocaine was either arbitrary or irrational. Members of Congress considered cocaine base to be more dangerous to society than cocaine because of crack's potency, its highly addictive nature, its affordability, and its increasing prevalence.[9] Senator D'Amato

---

5. He asserts that cocaine can easily be turned into cocaine base simply by cooking it in baking soda. He also alleges that, when injected into the blood stream, the rush and addictive quality of cocaine is just as powerful as that of cocaine base.

6. *See Supplementary Report On The Initial Sentencing Guidelines and Policy Statements* 18 (1987).

7. In 1989, this circuit ruled on the constitutionality of the Guidelines with respect to a procedural due process challenge. *United States v.*

*Brittman*, 872 F.2d 827 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989). We held that the Guidelines did not unconstitutionally restrict the discretion of sentencing judges. *Id.* at 828. We held further that "in any event the Constitution does not guarantee individualized sentencing, except in capital cases." *Id.* at 828.

8. Buckner does not contend that the Sentencing Guidelines are discriminatory.

9. *See, e.g., "Crack" Cocaine: Hearing* (statement of Sen. Roth, Chair of Subcomm.) ("a frighten-

addressed specifically the reasoning underlying the "100 to 1 ratio":

> Because crack is so potent, drug dealers need to carry much smaller quantities of crack than of cocaine powder. By treating 1,000 grams of feebase [sic] cocaine no more seriously than 1,000 grams of cocaine powder, which is far less powerful than freebase, current law provides a loophole that actually encourages drug dealers to sell the more deadly and addictive substance, and lets them sell thousands of doses without facing the maximum penalty possible.

132 Cong.Rec. S8092 (daily ed. June 20, 1986).

To date, no court has considered the constitutionality of the "100 to 1 ratio" as applied to sentencing *ranges* defined by the Sentencing Commission. The Ninth Circuit, however, explicitly confronted the constitutionality of the "100 to 1 ratio" of cocaine to cocaine base set forth in 21 U.S.C. § 841(b)'s delineation of *minimum* sentences. In *United States v. Malone,* 886 F.2d 1162, 1166 (9th Cir.1989), that court held that Congress, in treating "50 grams of cocaine base as equivalent to five kilograms of cocaine[,] chose a 'market oriented approach' to sentencing." [10] The court had previously held that this approach was constitutional. Although not referring specifically to the "100 to 1 ratio," other circuits have upheld the constitutionality, against a substantive due process attack, of the sentences Congress

ing and dangerous new twist in the drug abuse problem [is] the growing availability and use of a cheap, highly addictive, and deadly form of cocaine known on the streets as 'crack' "); *id.* at 4 (statement of Sen. Nunn) ("crack cocaine [is] an unprecedented peril to the health and well-being of our Nation"); *id.* at 7 (statement of Sen. Chiles) ("the carnage that [crack] is going to leave in its path is something I don't know if this country can literally survive"); 132 Cong. Rec. S8091 (daily ed. June 20, 1986) (statement of Sen. D'Amato) (citation omitted) (" 'crack represent[s] a quantum leap in the addictive properties of cocaine' "); 132 Cong.Rec. S14282 (daily ed. Sept. 30, 1986) (statement of Sen. Kennedy) ("A new, cheaper—and far more dangerous—form of cocaine, called 'crack' or 'rock,' is easier to transport and use"); 132 Cong.Rec. S14293 (daily ed. Sept. 30, 1986) (statement of Sen. Bumpers) ("The recent introduction of 'crack' cocaine, an even more potent and dangerous substance [than cocaine,] has allowed [the] percentage [of children using drugs in the U.S.] to spiral upward").

Several drug abuse experts testified before Congress as to the comparative dangers of cocaine base and cocaine. *See, e.g., "Crack" Cocaine: Hearing,* note 2 *supra.* In explaining the difference between crack and cocaine, Dr. Robert Byck, M.D., Prof. of Psychiatry and Pharmacology, Yale University School of Medicine, stated:

> [I]f you heat [cocaine base] to about the temperature of boiling water, it goes off into a vapor. [Then you can] inhale it into your lungs, and you can take a lot [in]. [By contrast, with cocaine, y]ou can pack your nose only so far ... As long as you keep breathing [the crack] vapor, you can get more dosage into yourself. That is the reason why crack ... is so dangerous. There is an unlimited amount that can go in.

> The speed of the material going to the brain is very rapid.... [Y]ou get an intense change in the mood of the individual, which initially is extremely pleasant, and someone wants to repeat it. But because it has gone in so fast, the level drops down quickly, and ... somebody feels terrible.... So you take some more.
>
> ... [Y]ou realize that this is going to get you a bit edgy, so you take alcohol along with it. Multidrug abuse is very common.... Taking heroin ... along with crack is fairly common.
>
> So here we have a substance that is tailor-made to addict people. What do we graft on to it? We graft on, first of all, this gigantic import industry of many billions of dollars. Second, our own American marketing methods ... [W]hat we have here is the fast food solution. It is not that McDonald's hamburgers are necessarily better, ... it is the fact that they are already prepared, they are ready to go, and they come in a little package. Here suddenly, we have cocaine available in a little package, in unit dosage, available at a price that kids can pay initially.

*Id.* at 20.

**10.** The "market oriented approach" mandates an "intense focus [first] on major traffickers ... who are responsible for creating and delivering very large quantities of drugs [and second] on the managers of the retail level traffic." H.R. Rep. No. 845, 99th Cong, 2d Sess. 11–12 (1986). The House Committee on the Judiciary concluded that the "managers," who do business with "substantial street quantities" are "serious traffickers because they keep the street markets going." *Id.* at 12. In determining what penalties were appropriate to what quantities of particular drugs, the Committee considered what quantities, "if possessed by an individual would likely be indicative of operating" at such levels. *Id.*

chose for cocaine base. *See, e.g., United States v. Solomon,* 848 F.2d 156, 157 (11th Cir.1988) (per curiam) (holding that Congress could rationally have concluded that cocaine base "posed a particularly great risk to the welfare of society warranting heavy sentences"); *United States v. Collado–Gomez,* 834 F.2d 280, 281 (2d Cir.1987) (per curiam), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988) (holding that Congress's purpose to deter "a particularly insidious form of criminal activity" with enhanced penalties is "clear, unequivocal, and rational").

We conclude that the "100 to 1 ratio" of cocaine to cocaine base in the Sentencing Guidelines is rationally related to Congress's objective of protecting the public welfare. Consequently, we reject Buckner's substantive due process challenge.

### B. *Cruel and Unusual Punishment Challenge*

■ As yet no circuits have ruled on an Eighth Amendment challenge to the distinction between cocaine and cocaine base required by Section 2D1.1(a)(3) of the Guidelines and 21 U.S.C. § 841(b). Many courts, however, including this one, have upheld the stiff minimum sentences required by Section 841(b) against various Eighth Amendment challenges. *See, e.g., United States v. Hoyt,* 879 F.2d 505, 512–14, *amended by* 888 F.2d 1257 (9th Cir. 1989); *United States v. Mendoza,* 876 F.2d 639, 641 (8th Cir.1989); *United States v. Kidder,* 869 F.2d 1328, 1333–34 (9th Cir. 1989); *United States v. Whitehead,* 849 F.2d 849, 860 (4th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); *United States v. Savinovich,* 845 F.2d 834, 839–40 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); *United States v. Holmes,* 838 F.2d 1175, 1178–79 (11th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988).

Buckner cites as support for his position *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983), which holds that sentences disproportionate to the crimes committed are prohibited by the cruel and unusual punishment clause of the Eighth Amendment. *Solem* sets forth the following guidelines for courts conducting proportionality analyses under the Eighth Amendment:

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 292, 103 S.Ct. at 3010.

To a substantial degree, our perceptions of crimes, their heinousness, and the dangers they pose to society dictate the punishment we impose. Therefore, in applying *Solem* here, we are cognizant of the message Congress intended to send to society by creating comparably stiff penalties for offenses involving cocaine base. By these penalties Congress sought to *reshape* society's perceptions about the seriousness of particular drug offenses. It hoped to convey the message that drug use was malign, not benign. It also sought to show that cocaine base posed a threat to individuals and to the very fabric of our society.

To accomplish this end, Congress explicitly selected a *higher* penalty for crimes involving cocaine base than previously might have appeared appropriate. In *Solem,* the Supreme Court asserted that in reviewing sentences under the Eighth Amendment, courts must grant "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes...." *Id.* at 290, 103 S.Ct. at 3009. The Court also cautioned that " '[o]utside of the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.' " *Id.* at 289–90, 103 S.Ct. at 3009–10 (citation omitted). In view of these factors, Buckner's burden in showing that the penalties for cocaine base offenses contravene the *Solem* proportionality test is very heavy indeed.

Applying the first prong of *Solem,* we acknowledge that Congress rationally concluded that cocaine and cocaine base are not the same. Congress found crack to pose a serious danger to our society much greater than that posed by cocaine. It

found also that very stiff penalties would be essential to control crack's use and distribution. Therefore, the sentences imposed by the Guidelines for crimes involving crack are not disproportionate to the seriousness of those offenses, which Congress rationally concluded necessitated a particularly severe penalty structure.

In applying the second prong, we recognize that Congress intended to signal that use and distribution of cocaine base is far more dangerous than use and distribution of many other drugs. *See United States Sentencing Commission Guidelines Manual*, at 2.38. Furthermore, when comparing the penalties imposed for cocaine base offenses with those imposed for nondrug offenses, we observe that the Sentencing Commission treated certain drug offenses as it did heinous crimes of violence.[11] There is no denying that the penalties for offenses involving cocaine base are stiff and require a revision of our perceptions about the relative dangers of particular offenses. In light of Congress's findings, however, we hold that the sentences for crimes involving cocaine base do not contravene the second prong of the *Solem* test.

Finally, the Sentencing Guidelines impose standardized penalties on similarly situated individuals in all federal jurisdictions. Thus, arguably, the third *Solem* factor is satisfied. Moreover, the sentences for crack offenses mandated by the Sentencing Guidelines are comparable to the penalties imposed in several states for crack violations. *See, e.g.*, Minn.Stat.Ann. § 152.15(1) (West 1989) (emphasis added) (imposing sentence of up to 20 years imprisonment or $60,000 fine or both for first conviction of manufacturing, selling, delivering, distributing, or possessing with intent to manufacture, sell, deliver, or distribute *three grams or more* of cocaine base); Tenn. Code Ann. §§ 39–17–417(i)(5) and 40–35–111(b)(2) (Supp.1989) (emphasis added) (imposing sentence of from 8 to 30 years and a fine of up to $200,000 for knowingly manufacturing, delivering, selling, or possessing with intent to manufacture, deliver, or sell

*26 grams or more* of any substance containing cocaine). Therefore, Buckner fails to meet the heavy burden of showing disproportionality.

Buckner's sentence for possession with intent to distribute cocaine base does not offend the Eighth Amendment.

AFFIRMED.

---

11. Whereas offenses involving 50 to 149 grams of cocaine base are level 32 offenses, first degree murder is a level 43 offense, *see United States Sentencing Commission Guidelines Man-* *ual*, at 2.3, second degree murder is a level 33 offense, *see id.*, and aggravated assault with a discharge of a firearm resulting in serious bodily injury is a level 24 offense, *see id.* at 2.6.