**UNITED STATES of America**

v.

**James C. LEWIS.**

**No. CR–1–90–122.**

United States District Court,
E.D. Tennessee, S.D.

May 1, 1991.

John W. Gill, U.S. Atty., Steven H. Cook, Asst. U.S. Atty., Chattanooga, Tenn., for U.S.

Ashley Owenby, Cleveland, Tenn., for James C. Lewis.

## MEMORANDUM

EDGAR, District Judge.

### I.

The defendant, James C. Lewis, has been growing marijuana in a barn behind his

house. During a search of the premises, law enforcement officials found 86 marijuana plants and 20 marijuana plant "rootballs," which the defendant admitted were the remnants of marijuana plants that he had cut within the six weeks prior to his arrest.

Mr. Lewis has pled guilty to violating 21 U.S.C. § 841(a)(1), unlawfully manufacturing marijuana, a Schedule I controlled substance. The indictment also alleges a violation of 21 U.S.C. § 841(b)(1)(B) which does not define a substantive offense, but specifies certain penalties [1] for violating 21 U.S.C. § 841(a)(1) based upon the amount of the controlled substance. 21 U.S.C. § 841(b)(1)(B)(vii) becomes operative where the amount of marijuana manufactured (grown) is:

> 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight....

For the purpose of determining the defendant's Base Offense Level under the Drug Quantity Table in § 2D1.1 of the Sentencing Guidelines, the presentence report assesses the defendant with 106 kilograms of marijuana. U.S.S.G. § 2D1.1 authorizes a conversion of marijuana plants to drug weight in the following terms:

> In the case of an offense involving marihuana plants, if the offense involved ... 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana....

United States Sentencing Commission, *Guidelines Manual,* § 2D1.1 (Nov.1990). Thus, 106 marijuana plants (if the "rootballs" are included) are, under the Sentencing Guidelines, the equivalent of 106 KG of marijuana.

## II.

The defendant, citing *United States v. Osburn,* 756 F.Supp. 571 (N.D.Ga.1991),

contends that there is no rational basis for the above-quoted provision of U.S.S.G. § 2D1.1 which treats a marijuana plant as the equivalent of one kilogram of marijuana. In *Osburn,* the district court based its decision on testimony of a Dr. ElSohly, who concluded that a marijuana plant cannot be expected to yield one kilogram of marijuana. *Id.* at 573.[2] From this, the court found that there is no rational basis for the "marihuana plant" [3] language in U.S.S.G. § 2D1.1 and determined that this provision of the Sentencing Guidelines is unconstitutional as a violation of the defendant's substantive due process rights.. *Id.* at 576.

## III.

■ The "marihuana plant" provision in U.S.S.G. § 2D1.1 is in fact essentially a mirror of the methodology which Congress used when it recently amended 21 U.S.C. §§ 841(b)(1)(A) and (B) which provides for mandatory minimum sentences for certain drug offenses. The rationale for these amendments was provided by Senator Biden, Chairman of the Senate Judiciary Committee, who said:

> Section 841(b)(1)(A) provides for a mandatory minimum 10 year penalty for distribution, or possession with intent to distribute, of "1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana." Defendants charged with possessing large quantities of marijuana plants have argued that the statutory definition of marijuana specifically excludes the seeds and stems of the plant, and that therefore these items may not be counted toward the 1,000 kilogram requirement.
>
> The government has argued in response that the term "mixture or substance" encompasses all parts of the plants as harvested, notwithstanding the statutory definition of "marijuana", but defendants contend that the "mixture or substance" language applies only to marijuana after

---

**1.** Among the specified penalties is a five year minimum sentence. At the time of the plea, however, the defendant reserved the right to contest at sentencing the amount of marijuana to be used as a basis for his sentence.

**2.** The testimony of Dr. ElSohly has been stipulated in this case and made a part of the record.

**3.** The Sentencing Guidelines spell marijuana with an "h."

it has been prepared for illegal distribution. The defendants' position has been adopted by at least one court. *United States v. Miller,* 680 F.Supp. 1189 (E.D. Tenn.1988).

The amendment is intended to curtail this unnecessary debate by providing that the minimum penalty is triggered either by the weight of the "mixture or substance" or by the number of plants regardless of weight. The bill uses 1,000 plants as the equivalent of 1,000 kilograms.

134 Cong.Rec. S17360, S17368 (daily ed. Nov. 10, 1988) (statement of Sen. Biden). In other words, Congress decided that to avoid arguments about whether parts of a marijuana plant other than the leaves are encompassed in the term "mixture or substance," it would merely say that where you have an entire plant, it will in effect be considered as a "mixture or substance" that weighs one kilogram regardless of its actual weight. Moreover, one kilogram does not appear to be an unreasonable estimate of the weight of an entire marijuana plant. In *Osburn,* Dr. ElSohly is said to have testified that a single plant can grow as much as two pounds of "usable" marijuana. This is only .2046 pounds short of a kilogram. Moreover, Joe Copeland, a special agent of the Tennessee Bureau of Investigation with extensive experience in marijuana eradication, testified at the sentencing hearing in this case that in his experience the average weight of an entire full grown marijuana plant is about ten pounds, and that most parts of the marijuana plant are indeed used in the marketing of marijuana. According to Agent Copeland, stalks, stems and seeds are often mixed with marijuana leaves to "cut" or dilute them when sold. Seeds are also used to plant the next generation of marijuana. The stalks and limbs can be beat against burlap material to produce THC (tetrahydrocannabinol) which can itself be smoked. In short, one marijuana plant can reasonably be expected to produce a kilogram of a mixture or substance containing marijuana.

The "marihuana plant" language in the Sentencing Guidelines immediately follows a paragraph which contains the following language:

Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance....

Thus, in the Sentencing Guidelines, the Sentencing Commission has done precisely what Congress did in amending 21 U.S.C. §§ 841(b)(1)(A) and (B), *i.e.,* for sentencing purposes, it has treated a marijuana plant as the equivalent of one kilogram of a "mixture or substance containing a detectable amount of marijuana."

The standard for reviewing legislation is very deferential. If statutes "are seen to have a *reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied....*" *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934). "[W]here the legislative judgment is drawn in question [inquiry] must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it." *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938). *See United States v. Avant,* 907 F.2d 623, 625 (6th Cir.1990).

In *United States v. Holmes,* 838 F.2d 1175 (11th Cir.), *cert. denied,* 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988), the defendant argued 21 U.S.C. § 841(b)(1) violated the due process clause since it is irrational to mandate punishment in relation to the quantity of cocaine possessed without regard to its quality or purity. The Eleventh Circuit concluded:

Here, the challenged statutory provision is contained in the Anti–Drug Abuse Act of 1986 and is rationally related to the Act's objective of protecting the public health and welfare by implementing stiff and certain penalties for those who violate federal drug laws. By enacting mandatory minimum sentences for such crimes, Congress could have concluded that individuals who possess large quan-

tities of mixtures containing detectable amounts of cocaine that has been "cut" with other ingredients and thereby multiplied for sale to others should be treated more severely than those who deal in smaller quantities of pure cocaine. Our responsibility is not to determine whether this was the correct judgment or whether it best accomplishes Congressional objectives; rather, our responsibility is only to determine whether Congress' judgment was rational. Believing that Section 841(b)(1) is rational, we conclude that it denies [the defendant] neither due process nor equal protection under the fifth amendment.

*Id.* at 1177–78.

The Sentencing Commission has significant discretion to determine the relative severity of federal crimes. *Mistretta v. United States,* 488 U.S. 361, 377, 109 S.Ct. 647, 657, 102 L.Ed.2d 714 (1989). The Eleventh Circuit in *Holmes* has said that there is a rational basis for penalizing those dealing in mixtures of cocaine more stringently than those with smaller amounts of more pure versions of the drug. Similarly, with respect to marijuana, it can fairly be said that in light of the intent of Congress to treat the whole marijuana plant as a "mixture or substance" containing marijuana, the Sentencing Commission did not deviate from that intent in promulgating the "mixture or substance" and "marihuana plant" language in U.S.S.G. § 2D1.1 and, further, that this section of the Guidelines has a rational purpose.

There is at least one other plausible rationale for treating a marijuana plant as one kilogram of marijuana regardless of weight. Congress and the Sentencing Commission might well have concluded that it wanted to focus on those who grow marijuana and thus at the top of the drug distribution chain with the idea of controlling the proliferation of the product at its source. It is not holy writ that the touchstone for a drug offense sentence must be the weight of the drug. A decision might well have been made to treat growers more severely than those lower down on the distribution chain. The point is it cannot be said here that there are no facts which compel the conclusion that there is no rational legislative purpose behind U.S.S.G. § 2D1.1. Therefore, the Court respectfully rejects the result reached in *Osburn.*

### IV.

 In this case, the defendant objects to the use of the "rootballs" in calculating the Guidelines. Neither 21 U.S.C. §§ 841(b)(1)(A) and (B) nor the Sentencing Guidelines defines the term "marijuana plant." Thus, neither the statute nor the Guidelines makes any distinction between live and dead plants or between harvested and unharvested plants.

We do know, as a result of the legislative history of 21 U.S.C. § 841(b)(1) as recited above, that the "marijuana plant" language was added to the statute to clarify the meaning of the term "mixture or substance" in response to such decisions as *United States v. Miller,* 680 F.Supp. 1189 (E.D.Tenn.1988). In that case, some of the marijuana was live and growing; some had been harvested and was drying in sheds; and some was lying in a truck. The district court in *Miller* held that the weight of the plant stalks would not be used to calculate the sentence because the stalks would not be a part of the "mixture or substance containing a detectable amount of marijuana."[4] By making the entire plant in effect a mixture or substance containing marijuana, and by the reference to *Miller* where the marijuana was both dead and alive, harvested and unharvested, it can be concluded (in the absence of any other helpful authority) that dead rootballs which were once live marijuana plants are indeed marijuana plants under 21 U.S.C. § 841(b)(1). It is also noteworthy that 21 U.S.C. § 802(16) defines marijuana in part as "all parts of the plant Cannabis sativa L., *whether growing or not....*" (emphasis supplied).

---

**4.** *Miller* was affirmed by the Court of Appeals. This particular aspect of the *Miller* case, however, was not appealed and not dealt with at the appellate level. *See United States v. Miller,* 870 F.2d 1067 (6th Cir.1989).

Since, as discussed above, U.S.S.G. § 2D1.1(b)(1) follows the same approach to marijuana plants as the statute, this conclusion applies as well to the term "marihuana" plant as used in the Sentencing Guidelines. If, under the statute and Guidelines, marijuana plants, regardless of weight, are to be used in calculating sentences, there appears to be no reason to distinguish between a plant that is growing and one that has, for a period of time, been harvested.

### V.

The 20 rootballs, when added to the 86 live plants, make a total of 106 marijuana plants. The defendant's Base Level is, therefore, calculated at 26. After adding two levels under U.S.S.G. § 2D1.1(b)(1) for possession of firearms during the commission of the offense, and after deducting two levels for acceptance of responsibility under U.S.S.G. § 3E1.1, the defendant's Offense Level total is 26, which yields a Guidelines range of 63 to 78 months. The defendant's sentence of incarceration in this case will be set at 63 months.