**UNITED STATES of America, Plaintiff,**

v.

**Daniel L. ROSS and Robert Holmes, Defendants.**

**No. CR–2–90–207.**

United States District Court, S.D. Ohio, E.D.

Oct. 31, 1991.

Bradley Barbin, Asst. U.S. Atty., Columbus, Ohio, for plaintiff U.S.

Lewis E. Williams, Columbus, Ohio, for defendant Robert Holmes.

Jeffrey Berndt, Columbus, Ohio, for defendant Daniel L. Ross.

## SENTENCING ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court for purposes of the sentencing of Defendants Daniel L. Ross ("Ross") and Robert Holmes ("Holmes"). Prior to sentencing the defendants, a variety of objections to the Presentence Report have been raised that need to be addressed. Specifically, Defendant Ross objects to the calculation of the sentence based upon the number of marihuana[1] plants rather than the actual weight of the plants[2]. Defendant Holmes likewise objects to the use of the number of plants rather than the actual weight of the plants. Defendant Holmes further objects to the utilization of statements by Melvin Baker in the presentence report, a three level enhancement based upon Defendant Holmes' role in the offense, and the notation of the Guideline range of 210–262 months, arguing the range constitutes "cruel and unusual punishment". An additional argument raised at the time of sentencing, yet not contained in the addendum to the respective presentence reports, was an "estoppel" argument based upon the Assistant United States Attorney's repre-

---

1. Throughout the Opinion the spelling of "marihuana" or "marijuana" varies dependent upon the source upon which the information is drawn. Either spelling is correct and the Court will attempt to be as consistent as possible.

2. Defendant had expressed a second objection to the presentence report, however, the objection concerned the potential of a fine being levied by the Court. Upon being informed in the courtroom that the Court had no intention of fining the defendant, the objection was withdrawn.

sentations to the Court during the sentencing of Co-defendant Melvin Baker, that the Government would agree that the appropriate Guideline offense level for this case would be a reduced level of 30. The Court will address these matters *seriatim*.

## FACTS

As previously stated, these defendants appear before this Court for purposes of sentencing. They stand convicted of conspiring to manufacture and possess with the intent to distribute in excess of 8,000 plants of marihuana, in violation of Title 21, U.S.C. § 846; the unlawful manufacture of in excess of 8,000 plants of marihuana, in violation of Title 21, U.S.C. § 841(a)(1) and § 841(b)(1)(A)(vii); and unlawful possession with the intent to distribute in excess of 8,000 plants of marihuana, in violation of Title 21, U.S.C. § 841(a)(1) and § 841(b)(1)(A)(vii).

The convictions were the result of an elaborate marihuana farming scheme. The defendants were growing the plant on three separate parcels of farmland, both indoors and outdoors. The properties were owned by coconspirator Melvin Baker, and were arranged to create a "greenhouse" type of effect for the cultivation of the marihuana. The testimony at trial and the observations of the officers' reflect that an extensive effort was given to provide the plants with ideal lighting, proper air circulation, and maintenance of the crop. Presumably, the great effort was made to create a near ideal growing atmosphere for the crop so as to obtain the maximum yield. In other words, this was no small time operation, as is evident by the seizure of miscellaneous lights, fans, and extension cords from the residences as well as various timers and transformers.

The process of cultivation being used by the conspirators is known as "hydroponics", which involves the clipping of immature plants and the growing of these plants in nutrient solutions which increases the total number of plants. The process is also commonly referred to as "cloning".

This illegal operation grew to the point that they erected a pole-barn so that they could grow upwards of 1,600 plants indoors under grow lights. In order to grow indoors, the conspiracy needed to tap Defendant Ross' expertise involving his knowledge of "cloning" and his ability to wire the sophisticated lighting necessary for the indoors growth. Defendant Holmes' role in the conspiracy was one of a leadership position. It is provided by his coconspirators that Holmes began the operation and enrolled the aid of others. It is further provided that Holmes was responsible for financing and planning, as well as assisting in the setup of the marihuana growing operations at the farms, and providing the seeds and handling the sales of the harvested crop. With the above-stated facts in mind, the Court will now turn its attention to the objections made by counsel to the presentence report.

## I. OBJECTION TO THE CALCULATION OF THE MARIHUANA'S WEIGHT BASED UPON THE NUMBER OF PLANTS RATHER THAN THE ACTUAL WEIGHT.

The defendants argue that although they agree that the probation officer has properly applied the Sentencing Guidelines to the case, the guideline should be declared unconstitutional. The applicable guideline section is 2D1.1, wherein it provides as follows:

In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided*, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana. (emphasis in original)

Pursuant to this guideline and the fact that the defendants possessed 8,046 marihuana plants, the probation officer found under the Drug Quantity Table, 2D1.1(c) that the proper weight is 8,046 kilograms of marihuana, or a base offense level of 34. Level 34 is the proper offense level when the drug quantity is determined to be "[a]t

least 3,000 KG but less than 10,000 KG of Marihuana."

The defendants argue that the plants were incapable of producing one kilogram of marihuana per plant and as such the utilization of this amount is improper. To that end, the Court notes the case of *United States v. Osburn*, 756 F.Supp. 571 (N.D.Ga.1991).

In *Osburn* the defendants argued that the statutory penalty scheme under which they were charged, and the sentencing guideline scheme under which they were to be sentenced, are unconstitutional under the Fifth Amendment Due Process Clause. Pursuant to that position, the Court took oral argument concerning the utilization of one kilogram per plant for purposes of sentencing. At the hearing the defendants presented the testimony of Dr. Mahmoud A. ElSohly, Research Professor and Program Coordinator of the Drug Abuse Research Program from the Research Institute of Pharmaceutical Sciences, School of Pharmacy, University of Mississippi. Dr. ElSohly's primary area of research is the production of marihuana for research. He stated that he had been involved in the growing of marihuana since 1976 and that he is the only person who has a contract with the government to grow marihuana for research. At the hearing, the doctor was admitted as an expert in the chemistry and botany of cannabis and the production of marihuana for research purposes.

His testimony provided that there is a variety of marihuana producing plants with varying growth cycles. He stated that some plants will mature in 8 weeks and will produce approximately 1–2 ounces of marihuana per plant. A second variety will mature in 12–16 weeks and will produce an average yield of 4–12 ounces. The final variety takes between 20 and 24 weeks to mature, however, it can produce an average of 4 ounces to 2 pounds of marihuana per plant.[3] The doctor testified that he had never seen nor grown a plant that produced 1 kilogram of marihuana. It was his opinion that a sentencing scheme based on

100 grams of marihuana per plant would be reasonable, but a scheme based on 1 kilogram or 1000 grams per plant would be very unreasonable.

Although the Court noted that "[i]t is well established that a defendant is not entitled to an 'individualized sentencing, and Congress may constitutionally prescribe mandatory sentences or otherwise constrain the exercise of judicial discretion *so long as such constraints have a rational basis* [,]' (emphasis added) (citations omitted) *United States of America v. Huerta*, 878 F.2d 89, 94 (2nd Cir.1989); *See Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1988) (holding that the Sentencing Guidelines are unconstitutional); *United States v. La Guardia*, 902 F.2d 1010, 1014–15 (1st Cir.1990)", *United States v. Osburn*, 756 F.Supp. 571, 573–74 (N.D.Ga.1991), the Court found "that there is no rational basis to support the Commission's 1000 grams per plant ratio for plants in groups of 50 or more." *Id.* at 576. The Court further found that "[t]he record clearly demonstrates that a 1000 gram equivalency cannot be empirically supported ... [and the court] finds that the Sentencing Guideline sec. 2D1.1 is unconstitutional to the extent that the Drug Quantity Table treats one cannabis plant as equivalent to 1000 grams of marijuana." *Id.*

To the contrary is the holding in *United States v. Lewis*, 762 F.Supp. 1314 (E.D.Tenn.1991), wherein the Court made due notice of the holding in *Osburn* yet expressly rejected it. In *Lewis* the district court, at 1315, found guidance and rationale in the words of Senator Joseph Biden, Chairman of the Senate Judiciary Committee, who said:

Section 841(b)(1)(A) provides for a mandatory minimum 10 year penalty for distribution, or possession with the intent to distribute, of "1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana." Defendants charged with possessing large quantities of marijuana plants have argued that the statutory definition of mar-

---

**3.** It should be noted that a kilogram is approximately 2.2 pounds. Therefore, a plant that

yields two pounds of marihuana is only two tenths of a pound from a full kilogram.

ijuana specifically excludes the seeds and stems of the plant, and that therefore these items may not be counted toward the 1,000 kilogram requirement.

The government has argued in response that the term "mixture or substance" encompasses all parts of the plants as harvested, notwithstanding the statutory definition of "marijuana", but defendants contend that the "mixture or substance" language applies only to marijuana after it has been prepared for illegal distribution. The defendants' position has been adopted by at least one court. *United States v. Miller*, 680 F.Supp. 1189 (E.D.Tenn.1988).

The amendment is intended to curtail this unnecessary debate by providing that the minimum penalty is triggered either by the weight of the "mixture or substance" or by the *number of plants regardless of weight.* The bill uses 1,000 plants as the equivalent of 1,000 kilograms.

134 Cong.Rec. S17360, S17368 (daily ed. Nov. 10, 1988). Senator Biden was specifically making reference to the amendments being made at the time to 21 U.S.C. §§ 841(b)(1)(A) and (B). The purpose of the amendments was "to avoid arguments about whether parts of a marijuana plant other than the leaves are encompassed in the term 'mixture or substance'." *Lewis*, 762 F.Supp. at 1316. Instead, the plant is merely treated as weighing one kilogram, regardless of its actual weight.

The Court in *Lewis* further disagreed with the conclusions of Dr. ElSohly based upon an expert's testimony before that court. The court noted that Joe Copeland, a special agent of the Tennessee Bureau of Investigation with extensive experience in marijuana eradication, testified that the average weight of an entire full grown marijuana plant is about ten pounds, and that most parts of the plant are used in the marketing of marijuana. The court noted that "[a]ccording to Agent Copeland, stalks, stems and seeds are often mixed with marijuana leaves to 'cut' or dilute them when sold. Seeds are also used to plant the next generation of marijuana. The stalks and limbs can be beat against burlap material to produce THC (tetrahy-

drocannabinol) which can itself be smoked. In short, one marijuana plant can reasonably be expected to produce a kilogram of a mixture or substance containing marijuana." *Id.* at 1316.

While this Court understands and respects the position taken by the Court in *Osburn,* I must respectfully disagree and concur with the holding in *United States v. Lewis, supra.* It has long been established that the Acts of Congress do not offend principles of substantive due process if they bear a "reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory." *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). As such, it is not the place of this Court "to determine whether [the statute] was the correct judgment or whether it best accomplishes Congressional objectives; rather, [courts] determine [only] whether Congress' judgment was rational." *United States v. Buckner*, 894 F.2d 975, 978 (8th Cir.1990) (citing *United States v. Holmes*, 838 F.2d 1175, 1178 (11th Cir. 1988), *cert. denied*, 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1989); *see United States v. Mendoza*, 876 F.2d 639, 641 (8th Cir.1989)). This Court believes that a reasonable and rational relation to a proper legislative purpose exists.

Before this Court is the single issue of whether, in treating less than 50 plants as equal to 100 grams per plant and treating over 50 plants as equal to 1000 grams per plant, Congress' judgment was rational. In subjecting Congressional Acts to judicial review the Court must question "whether any state of facts either known or which could reasonably be assumed affords support for it." *United States v. Carolene Products Co.*, 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938).

A close analogy can be drawn between the issue before this Court and the issue that has been repeatedly addressed concerning the sentencing guidelines' treatment of cocaine, versus cocaine base (otherwise referred to as "crack"). Specifically, under the sentencing guidelines cocaine to cocaine basis is treated under a "100 to 1" ratio; whereby 1 gram of cocaine base is

treated as 100 grams of cocaine, although cocaine base is actually a derivative of cocaine and usually contains *less* pure cocaine by weight. In essence, this is legal fiction given effect by virtue of society's dim view of cocaine base coupled with its devastating effect on this country's current drug problem. The Courts, in reviewing the 100 to 1 ratio look to the legislative intent behind cocaine base's treatment under the guidelines. To that end, it was noted in *United States v. Buckner*, 894 F.2d 975, 979 (8th Cir.1990) that Senator D'Amato, the Republican from New York, commented on the reasoning underlying the "100 to 1" ratio:

> Because crack [cocaine base] is so potent, drug dealers need to carry much smaller quantities of crack than cocaine powder. By treating 1,000 grams of feebase [sic] cocaine no more seriously than 1,000 grams of cocaine powder, which is far less powerful than freebase, current law provides a loophole that actually encourages drug dealers to sell the more deadly and addictive substance, and lets them sell thousands of doses without facing the maximum penalty possible.

132 Cong.Rec. S8092 (daily ed. June 20, 1986).

In noting the apparent reasoning behind the ratio, the *Buckner* court upheld the constitutionality of the guideline.[4] Similarly, other courts have likewise ruled the guidelines' treatment of cocaine base to be constitutional. *See, e.g., States v. Solomon*, 848 F.2d 156, 157 (11th Cir.1988) (per curiam) (holding that the Congress could rationally have concluded that cocaine base "posed a particularly great risk to the welfare of society warranting heavy sentences"); *United States v. Collado-Gomez*, 834 F.2d 280, 281 (2d Cir.1987) (per curiam), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988) (holding that Congress's purpose to deter "a particularly insidious form of criminal activity" with enhanced penalties is "clear, unequivocal, and rational").

While the 100 to 1 ratio concerning cocaine does not provide an exact corollary to the issue confronting this Court, it does reflect Congress' proclivity for making value and quantitative judgments relating to the societal impact of the drug, the amount of drug in possession, the role that individual and similarly situated individuals play in the overall drug cultivation and distribution chain, and a variety of other perceived exacerbating circumstances. The reasons for the 100 to 1 ratio have been widely documented and more recently the courts have been noting the perceived reasons and support for the treatment of individuals growing more than fifty plants of marihuana. To that end the Court notes the Seventh Circuit's recent decision in *United States v. Webb*, 945 F.2d 967 (7th Cir.1991).

In *Webb*, at 968, the Court found that the "legislative history of 21 U.S.C. § 841 reveals Congress' intent: Believing 'that the federal government's most intense focus ought to be on major traffickers' in illegal drugs, Congress, 'after consulting with a number of DEA agents and prosecutors about the distribution patterns for these various drugs ... selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level.' H.R.Rep. No. 845, 99th Cong.2d Sess. 11–12 (1986)." With that information and the decisions in *United States v. Rose*, 881 F.2d 386, 389 (7th Cir. 1989) and *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the Court concluded that "the Guidelines merely reflect Congress' decision to use the fiftieth plant as a [sic] indicator of culpability and participation in the drug marketplace." Essentially, the guidelines create a 10 to 1 weight ratio for those growing in excess of 49 plants. As previously mentioned, the defendant views this as disparate treatment in violation of his Fifth Amendment right to substantive due process.

The first proposition that must be taken as true is the fact that while the marihuana

---

**4.** In *Buckner*, as in the instant case, the guidelines came under a challenge under a Fifth Amendment Substantive Due Process argument.

plant is still growing the exact weight of marihuana that that plant will yield can only be speculated. Furthermore, it has long been held, and in this Court's mind, properly held, that "[w]hen marijuana is found in live plant form, '[w]eight is irrelevant, because the actual amount of usable marijuana had the plant been allowed to fully grow is unknown.... [If] weight were used as the measure, the Guidelines would reward a defendant for being arrested early in the growing cycle before the plants have matured.'" *United States v. Graham,* 710 F.Supp. 1290, 1291 (N.D.Cal. 1989). As such the proper method for sentencing must be to count the number of plants being grown and then apply a standard weight to each plant. The parties do not appear to contest this. Instead, the difficulty occurs when the Guidelines attempt to assign a weight of one kilogram to the individual plants.

Interestingly enough, however, the weight assigned to the plants is really meaningless, for whether each plant is considered one gram of marihuana or one ton of marihuana it has no bearing on the sentence until the weight is assigned an offense level by the Drug Quantity Table at sec. 2D1.1(c). And furthermore, the offense level is meaningless until it is assigned a guideline range in terms of months of incarceration, which is really the bottomline and all that the defendant is really interested in. Therefore, to merely attack one aspect of the entire calculation is an injustice to the thought process put into the entire set of quantitative assignments made throughout the sentencing calculation and the interrelationship between the separate calculations. In other words, the Sentencing Guideline Commission could have just as easily assigned a weight less than one kilogram to each plant, for example 10 grams, then reach the same offense level by determining that instead of assign-

ing offense level 34, as is the offense level in the instant case, to "[a]t least 3,000 KG but less than 10,000 KG of Marihuana", assigning that offense level to 30 to 100 kilograms. In either case the term of imprisonment would be the same but the assigned weight would vary. Therefore, part of the defendant's argument must include a presumption, indeed a desire, that every aspect of the guideline calculation remains constant except the weight assigned to the individual plants.

Therefore, to argue that the application of 1 kilogram to 1 marihuana plant is not "rational" or "reasonably related", and yet fail to look to all of the other variables that are included in calculating the proper sentencing level is an inappropriate and narrow view. The true question should not be how each step of the guideline is calculated, rather whether the cultivation of over 8,000 marihuana plants should place an individual in prison for between 151 and 327 months.[5] This obviously is not an issue for this Court to decide, and rather, is left to the purview of the legislature in its adoption and amendment of the Sentencing Guidelines.

However, in focusing solely upon the application of one kilogram to a marihuana plant when the individual is growing fifty or more plants, it is obvious that the Guideline Commission and the Seventh Circuit[6] viewed a difference between the cultivator of less than fifty plants and the cultivator of fifty or more plants. In so doing the Commission came to the conclusion that the individual that grows fifty or more plants is essentially ten times more reprehensible than his counterpart growing less than fifty.[7] To this end the Court concurs with the Seventh Circuit and the holding in *United States v. Lewis, supra* and does not find the guideline to be unconstitutional under the Fifth Amendment as being without "ra-

---

**5.** The 151 months is the minimum a level 34 offense can bring if the defendant is a criminal history level I, and 327 is the maximum sentence an individual can receive if the criminal history level is calculated to be a level VI.

**6.** *See United States v. Webb,* 945 F.2d 967 (7th Cir.1991).

**7.** It should be noted that the defendants argue that the guideline's application of one kilo to each plant is not "rational", and they do not argue that such an application is contrary to the statute's sentencing provisions, 21 U.S.C. § 841(b)(1)(D).

tional relation" to the efforts of Congress. It would appear that there is a conflict as to whether a plant can in fact produce nearly a kilogram of marihuana, based upon the testimony of two separate experts in two separate cases [8], however the conflict is not so great so as to conclude that equating one plant to one kilogram of marihuana is "irrational".

Further, as the Court briefly addressed, focusing only on the assignment of weight to each plant without realizing that that weight is merely one minor factor in the entire sentencing calculation is an attempt to circumvent the expressed will of Congress.

Therefore, based upon the reasons enumerated above, Defendant Ross' and Defendant Holmes' objection to the calculation of the weight of the marihuana is hereby DENIED.

## II. OBJECTION TO THE UTILIZATION OF STATEMENTS GIVEN BY CO-CONSPIRATOR MELVIN BAKER IN THE PRESENTENCE REPORT.

█ The defendants object to the probation officer's use of statements from coconspirator Melvin Baker in the Presentence Report. The defendants object to the information from Baker arguing that they should not be used because he was not called to testify at trial. The defendants provide this Court with no case law nor other authority reflecting a bar to statements by individuals not made at trial. As such the objection is not well taken and is hereby DENIED.

## III. OBJECTION TO HOLMES' THREE LEVEL ENHANCEMENT BASED UPON THE DEFENDANT'S ROLE IN THE OFFENSE.

█ Defendant Holmes objects to a three level enhancement based upon his role in the offense. The basis of his objection is a continuation of his second objec-

tion, specifically, he objects to the use of Melvin Bakers' statements to determine his role in the offense given that Baker did not testify at trial. The Probation Officer's recommended a three level enhancement based upon § 3B1.1(b) of the Guidelines. It provides as follows:

> § 3B1.1 *Aggravating Role*
>
> Based upon the defendant's role in the offense, increase the offense level as follows:
>
> \*     \*     \*     \*     \*     \*
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

The commentary to section 3B1.1 suggests that the court should consider "the nature of participation in the commission of the offense, the recruitment of accomplices, ... and the degree of control and authority exercised over other." U.S.S.G. § 3B1.1, comment. (n. 3).

It has long been held that the Court need find by a preponderance of the evidence that the defendant played an aggravating role in the commission of the crime for which he was convicted. *See United States v. Carroll,* 893 F.2d 1502, 1506 (6th Cir.1990). In reviewing the report of the probation officer and after having had the opportunity to witness the testimony at trial, it is clear to this Court that the defendant did play a supervisory role in the commission of the offense, that the supervision encompassed more than five individuals, and that the supervision was "otherwise extensive". Holmes actively recruited Melvin Baker and his land as the site for the illegal operation and he actively recruited Daniel Ross to lend his expertise in the cultivation of the crop. It is the position of this Court that the three level enhancement is warranted and as such the objection is hereby DENIED.

---

**8.** Submitted as Defendant Ross' Exhibit 1 is a letter from Dennis S. Carley, Chief Deputy of the Perry County Sheriff's Department. The letter is addressed to Chief Probation Officer Bob Mahler, and provides that it is his opinion that the plants he seized "would not yield a kilogram per plant." The letter does not provide Officer Carley's qualifications to make such a judgment and as such is of minimal use for this Court's purposes.

## IV. OBJECTION TO THE UTILIZATION OF AN OFFENSE LEVEL GREATER THAN THE REDUCED LEVEL EXTENDED TO MELVIN BAKER AT HIS SENTENCING.

■ The defendants have made reference to the reduced offense level extended by the Government to Melvin Baker, an offense level of 30, and have argued that the reduced level should likewise be provided to them. The argument is apparently an equitable estoppel argument. The Court accepted the reduced level in sentencing Melvin Baker and is of the opinion that that acceptance binds the Court and the Government as it relates to the similarly situated codefendants. As such, the Defendants argument is well taken and the Court will reduce Defendant Ross' offense level from a 34 to a 30, and Defendant Holmes' offense level from a 37 to a 33.[9]

■ The Defendants make a further argument that the guideline range of 210–262 months, an offense level of 37, constitutes "cruel and unusual" punishment under the Eighth Amendment to the United States Constitution. As noted above, the guideline range utilized by this Court for sentencing is 135–168 months, or an offense level of 33. Whether that ruling makes the defendants' arguments moot are not known by this Court, however, in either case this Court is of the opinion that the range does not violate the Eighth Amendment to the Constitution.

In the Supreme Court case of *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983), the Court noted that sentences disproportionate to the crimes committed are prohibited by the cruel and unusual punishment clause of the Eighth Amendment. *Solem* set forth the following guidelines in considering whether a sentence ran afoul of the Constitution's amendment:

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 292, 103 S.Ct. at 3011.

Essentially, parts (ii) and (iii) have been rendered moot by the adoption of the Sentencing Guidelines. It is clear under the Guidelines that any individual convicted of possessing with the intent to distribute in excess of 8,000 growing plants will be placed in a very similar sentencing range, excluding any mitigating or exacerbating circumstances. As such, this Court must only concern itself with the issue of the "gravity of the offense and the harshness of the penalty."

To a large degree, society's perception of a crime's heinousness is, through our elected representatives, vicariously determinative of the sentence adopted by the legislature and imposed by the courts. The issue before this Court is the societal perception of the nefariousness of the growth of enormous amounts of marihuana, and the extent of punishment such activity earns. To that end the Court is cognizant of the Supreme Court's assertion in *Solem* that in reviewing sentences under the Eighth Amendment, courts must grant "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes...." *Id.* at 290, 103 S.Ct. at 3009. The Supreme Court further admonished and forewarned the lower courts that " '[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.' " *Id.* at 289–90, 103 S.Ct. at 3009 (citation omitted). As previously concluded by this Court, there exists rational bases upon which the legislature did or may have relied upon in concluding that the cultivation of such a large amount of marihuana mandates a severe sentence. This Court is not prepared to supplant the congressional will and the apparent societal

---

**9.** Holmes' offense level is three levels higher due to the adjustment for his role in the offense under U.S.S.C. § 3B1.1(b). Neither Baker nor Holmes received a similar enhancement, thus the discrepancy.

concern over such large amounts of marihuana. As such, the objection to the sentencing range as being "cruel and unusual" is not well taken and is hereby DENIED.

## CONCLUSION

Pursuant to the decisions rendered above and the reasoning previously stated this Court sentences the defendants as follows:

Defendant Ross is hereby committed to the custody of the Attorney General for a period of incarceration of 135 months. This sentence is at the top of his guideline range of 108–135 months and is based upon the staggering amount of marihuana being grown by the individuals and takes into consideration the substantial reduction in sentence afforded the defendant by virtue of reducing the offense level to 30.

Defendant Holmes is hereby committed to the custody of the Attorney General for a period of incarceration of 168 months. This sentence is likewise based upon the enormous amounts of marihuana being cultivated by the individuals and the leniency already displayed. Furthermore, the Court views the defendant as having a high risk of being a recidivist based upon his demeanor before the Court.

This Opinion and Order serves as a clarification of the Court's rulings and should not be interpreted to amend in any way the sentence imposed on the date of sentencing. A detailed statement as to the sentence, including supervised release and special assessments, is contained in the order of Judgment and Commitment.

IT IS SO ORDERED.