**UNITED STATES of America**

v.

**Shawn MURPHY.**

No. 2:91–CR00042 (PCD).

United States District Court, D. Connecticut.

Feb. 27, 1992.

Alex Hernandez, Asst. U.S. Atty., Hartford, Conn., for U.S.

John Andreini, Hartford, Conn., for Shawn Murphy.

RULING ON MOTION TO DECLARE THE PENALTY SCHEME OF THE STATUTE AND RELATED SENTENCING GUIDELINES UNCONSTITUTIONAL

DORSEY, District Judge.

On September 13, 1991, defendant plead to one count of growing in excess of 100 marijuana plants in violation of 21 U.S.C. § 841(a)(1). The penalty for this offense includes imprisonment for not less than 5 years, nor more than 40 years. 21 U.S.C.

§ 841(b)(1)(B)(vii). The sentencing guideline range, based on the statutory plant-weight equivalency, is 63–78 months. U.S.S.G. § 2D1.1. Defendant alleges that that penalty scheme deprives him of equal protection and due process rights.

*Background*

The mandatory sentence pertains to possession of

> 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight.

21 U.S.C. § 841(b)(1)(B)(vii). The guideline provides:

> In the case of an offense involving marijuana plants, if the offense involved (A) 50 or more marijuana plants, treat each plant as equivalent to 1 KG of marijuana; (B) fewer than 50 marijuana plants, treat each plant as equivalent to 100 G of marijuana. *Provided,* however, that if the actual weight of the marijuana is greater, use the actual weight of the marijuana.

U.S.S.G. § 2D1.1. Defendant argues that the statute arbitrarily and irrationally creates one sentencing scheme predicated on an unfounded, irrebuttable equivalent marijuana weight per plant for growing marijuana plants and another scheme based upon the actual weight of the marijuana for marijuana possession. Defendant further alleges that the scheme irrationally relates penalty severity to the time of the arrest within the production cycle as a result of using an arbitrary, unfounded per plant equivalency for plant growing. Suggesting that defendant misinterprets the statute and guidelines, the government argues that the weight equivalency per plant is not intended to reflect scientific accuracy but is rationally related to the legitimate congressional wish to provide severe penalties for a specific violation, marijuana plant growing.

*Analysis*

■ Acts of Congress are subject to judicial review, but only with considerable deference to legislative prerogative. *See United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). "Acts do not offend principles of substantive due process if they bear a 'reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory.'" *United States v. Buckner,* 894 F.2d 975 (8th Cir.1990), quoting *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934). *See also, Marshall v. United States,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974) ("Statutory distinctions must have a rational basis and must be relevant to the purpose underlying the classification."). A defendant is not entitled to "[a]n individualized sentencing, and Congress may constitutionally prescribe mandatory sentences or otherwise constrain the exercise of judicial discretion so long as such constraints have a rational basis." *United States of America v. Huerta,* 878 F.2d 89, 94 (2nd Cir.1989). *See also, Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The inquiry here is thus whether there is a rational basis for the penalty provisions established by congressional directive.[1]

In enacting § 841(b)(1)(B), Congress "[i]ntended to punish growers of marijuana by the scale of potential of their operation and not just by the weight of the plants seized at a given moment." *United States v. Eves,* 932 F.2d 856, 859 (10th Cir.1991), quoting *United States v. Fitol,* 733 F.Supp. 1312, 1315 (D.Minn.1990). Congress established a weight equivalency of one plant to one kilogram of usable marijuana in cases involving over 100 plants in order to preclude debate over the actual weight of a marijuana plant. Defendant does not contest Congress's authority to mandate a weight equivalency scheme, but avers that the equivalency was arbitrarily adopted. The government argues that the ratio of one kilogram per plant is founded on the

---

**1.** As no group discrimination is involved, the only consideration is whether Congress had a rational basis for its choice of penalties. *See*

*Chapman v. United States,* —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

market-oriented approach, "intense focus on major traffickers ... who are responsible for creating and delivering very large quantities of drugs." H.R.Rep. No. 845, 99th Cong., 2d Sess. 11–12 (1986). "[C]ongress focused on the number of doses that a dealer could immediately distribute from a sale of drugs." *United States v. Hoyt*, 879 F.2d 505 (9th Cir.1989). Punishment is thus correlated to potential impact upon the market. This analysis, however, does not provide a rational basis for the penalty scheme. In *United States v. Buckner*, 894 F.2d 975 (8th Cir.1990), the court addressed the constitutionality of a sentencing recommendation equating 1 gram of cocaine base with 100 grams of cocaine. In upholding the guideline, the court pointed to extensive congressional hearings regarding the market potential of crack-cocaine in contrast to that of cocaine, and noted that "[C]ongress considered cocaine base to be more dangerous to society than cocaine because of crack's potency, its highly addictive nature, its affordability, and its increasing prevalence." *Buckner*, 894 F.2d at 978. Congress's deliberations on this matter provide further insight:

> Because crack is so potent, drug dealers need to carry much smaller quantities of crack than cocaine powder. By treating 1,000 grams of feebase [sic] cocaine no more seriously than 1,000 grams of cocaine powder, which is far less powerful than freebase, current law provides a loophole that actually encourages drug dealers to sell the more deadly and addictive substance, and lets them sell thousands of doses without facing the maximum penalty possible.

*Buckner*, 894 F.2d at 979, quoting 132 Cong.Rec. S8092 (daily ed. June 20, 1986). An equivalency can be the method for prescribing sentence severity in relation to the respective danger to the community from the two forms of cocaine. However, neither the legislative history nor the government's memorandum demonstrate a plausible rationale for the concept that growing marijuana plants poses a significantly greater or different threat to the market than the possession of the harvested, market-ready yield of such plants. Unharvested marijuana has not been shown to constitute a more immediate and pernicious danger than marijuana ready for use.

■ If the offense is to be punished according to its *potential* impact upon the market, some rational relationship between one marijuana plant and its presumed marketable marijuana potential is required. The government does not dispute the failure of the statutory and guideline equivalency to reflect accurately the potential yield of a marijuana plant.[2] The guidelines' commentary regarding the equivalency of 100 grams of marijuana per marijuana plant for *less* than fifty plants confirms that a one kilogram per plant equivalency is unrelated to the actual production potential of a marijuana plant:

> The decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana. In controlled substance offenses, an attempt is assigned the same offense level as the object of the attempt.... Consequently, the Commission adopted the policy that, in the case of fewer than fifty marihuana plants, each plant is to be treated as the equivalent of an attempt to produce 100 grams of marihuana, except where the actual weight of the usable marihuana is greater.

U.S.S.G. § 2D1.1, Commentary 89–90. *See also*, *United States v. Osburn*, 756 F.Supp. 571, 576 (N.D.Ga.1991) ("The record demonstrates that it is not possible for 1000 grams per plant to be a rational equivalent of marijuana harvested from any given group of plants."); *United States v. Lee*, 762 F.Supp. 306, 307 (D.Kan.1991) ("[T]he uncontroverted evidence supplied to this court indicates that 100 marijuana plants can never produce 100 kilograms of mari-

**2.** The government disclaims any factual substantiation for the one kilogram of marijuana per plant equivalency, but argues that it implements Congress's choice of a sentencing scheme for manufacturers of narcotics. That Congress may choose to do so is unquestioned. However, no authority is cited for the argument that a rational legislative goal may be achieved through arbitrary or irrational means.

juana substance. The only conclusion available to this court is that the selection of the 100 plant figure was arbitrary."). That factually substantiated per plant equivalency demonstrates the irrationality and arbitrariness of a ten-fold increase in the equivalency for over 50 plants (under the guidelines) and for 100 or more plants (under the statute).

The rationality of the one kilogram equivalency is thrown further into question when the actual weight is used to measure sentences where the marijuana has been harvested and is market ready. Since the penalty for possession of market-ready marijuana is scaled to its potential danger by its weight, whereas the penalty for growing plants is scaled to an arbitrary, unsubstantiated equivalent weight of marijuana for over 50 or 100 plants, the result is anomalous. "A defendant who is not arrested until after he has harvested the marijuana will inevitably receive a lighter penalty than a defendant who is arrested while the plants are still growing...." *Osburn*, 756 F.Supp. at 576. The following table is illustrative:

| Plants Grown | Yield | Offense Level [3] | Sentence Range |
|---|---|---|---|
| 49 | 4.9 Kg. | 12 | 10–16 mos. |
| 50 | 50 Kg. | 20 | 33–41 mos. |
| 100 | 100 Kg. | 26 | 63–78 mos. |
| 49* | 4.9 Kg. | 12 | 10–16 mos. |
| 50* | 5 Kg. | 14 | 15–21 mos. |
| 100* | 10 Kg. | 16 | 21–27 mos. |

*In these examples, the plants have been harvested and are assumed to have yielded 100 grams per plant, the factually substantiated yield.

Thus, a significantly greater penalty is imposed on those apprehended before harvest than on those apprehended after harvest.[4] Neither the congressional record nor the government's brief offer a rationale for treating with greater severity the grower of plants as opposed to the possessor of the harvest from the same plants. Although Congress's authority to adopt an enhanced sentencing scheme for given offenses, including large-scale manufacture of marijuana, is not questioned, the present scheme does not peg the sentence to risk immediacy. Rather, the scheme penalizes less severely conduct (possession) which creates the greater danger. Such a legislative judgment is arbitrary and cannot be sustained on rational grounds.[5]

Congress's authority to formulate harsher penalties relative to the perceived danger from the manufacture, sale, and distribution of narcotics is unquestioned. Nor must Congress establish either a precise and scientifically accurate equivalency between one marijuana plant and the usable marijuana it will yield, nor a penalty frame-

**3.** In each case no adjustments are made and Criminal History Category I is used.

**4.** The government's assertion that Congress has determined to punish those who cultivate marijuana plants more severely than those who "possess small amounts of drugs" is misleading. A drug trafficker is a drug trafficker.

**5.** *United States v. Holmes*, 838 F.2d 1175 (11th Cir.1988), and *United States v. Bishop*, 894 F.2d 981 (8th Cir.1990), cited by the government, are unavailing. Those courts found that sentencing based on the quantity of drugs need not consider the purity of the controlled substance in question. Hence, the government suggests, the quality of marijuana plants—that is, how much they can actually produce—is not relevant to sentencing. However, unlike in *Holmes* and *Bishop*, defendant does not argue that his particular plants would not have produced one kilogram of marijuana but that *no* marijuana plant could produce at that rate. In consequence, the quality of defendant's plants is not at issue. The issue is the rationality of the sentencing scheme based on an arbitrary equivalency.

work that treats the growing of marijuana identically to the possession of marijuana to survive constitutional challenge. *See United States v. Motz,* 936 F.2d 1021 (9th Cir.1991) ("We have recognized that the eventual yield of a [marijuana] plant is unknown."). However, arbitrary and irrational means cannot be invoked to serve valid legislative goals. The legislative determinations involved in the enactment of 21 U.S.C. § 841(b)(1)(B)(vii) and the accompanying sentencing guideline, U.S.S.G. § 2D1.1 are not rationally related to the stated legislative objective.

To the extent that one can discern congressional intent in the sentencing scheme found in the statute and the guidelines, the intent suggested, degree of penalty tied to degree of risk, is inconsistent with the actual risks. The legislative history offers some insight:

> Believing "that the federal government's most intense focus ought to be on major traffickers" in illegal drugs, Congress, "after consulting with a number of DEA agents and prosecutors about the distribution patterns for these various drugs … selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level."

*United States v. Webb,* 945 F.2d 967 (7th Cir.1991), citing *United States v. Rose,* 881 F.2d 386 (7th Cir.1989). quoting H.R.Rep. No. 845, 99th Cong., 2d Sess. 11–12 (1986). Further:

> By changing the determining factor from weight to number of "plants regardless of weight" Congress intended to punish growers of marijuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment. Congress must have found a defendant who is growing 100 newly planted marijuana plants to be just as culpable as one who has successfully grown 100 kilograms of marijuana.

*United States v. Eves,* 932 F.2d 856, 859 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991), quoting *United States v. Fitol,* 733 F.Supp. 1312, 1315 (D.Minn.1990). Similarly:

> Congress and the Sentencing Commission might well have concluded that it wanted to focus on those who grow marijuana and thus at the top of the drug distribution chain with the idea of controlling the proliferation of the product at its source. It is not holy writ that the touchstone for a drug offense sentence must be the weight of the drug. A decision might well have been made to treat growers more severely than those lower down on the distribution chain.

*United States v. Lewis,* 762 F.Supp. 1314, 1317 (E.D.Tenn.1991) *Lewis,* 762 F.Supp. at 1317.

Notwithstanding the efforts to construct Congress's intent, the penalty scheme does not rationally harmonize with its asserted objective. The purported intent to focus on "major traffickers" is inconsistently implemented by the treatment of possessors of large quantities of marijuana, such as 50 kilograms, leniently by comparison to those who grow 100 plants with an actual equivalent of 10 kilograms. There is no evidence to support the imposition of a significantly greater penalty upon traffickers, i.e., growers, at a different phase in the production cycle, when plants are further from harming the community than is harvested marijuana. Moreover, the desire to punish traffickers "by the scale or potential" of their operation, as discussed above, is undermined by the plain certainty that 100 plants cannot produce 100 kilograms of useable marijuana, the chosen measure of that scale or potential. The incongruity between the asserted rationale and the language of the statute is unsound and irrational. Finally, the notion that Congress may simply have intended to punish growers more severely is contradicted by the statute and guidelines mandate of unequal treatment of growers, dependent on whether they are apprehended before or after harvest.[6] The scheme results in higher

---

**6.** The assertion in *Lewis* that weight need not be the "touchstone of drug offense sentencing," while true, overlooks the fact that Congress has established two different weight equivalencies dependent on the number of plants. A scheme which applied different sentences based solely

sanctions for growers caught before harvest and substantially lower sanctions for those not arrested until after the completion of harvest. There is no rational basis for treating more leniently the possession of the yield of plants which is closer to use while punishing significantly more severely the growing of the same plants. The result is different and unequal treatment of those apprehended in different stages of the identical activity, making marijuana available. It would treat differently and unequally a grower depending on his ability (or luck) in concealing his crop until harvest. Looked at in specific terms, a grower of 100 plants is sentenced as though he possessed 100 kilograms of dried marijuana. For a dealer to possess 100 kilograms of useable marijuana (assuming the substantiated equivalency of 100 grams per plant) he necessarily had to grow 1000 plants. The statute would thus treat the grower of 100 plants the same as a grower of 1000 plants who has succeeded in harvesting his crop before being arrested. This result fails to comport, uniformly, with any of the stated, assumed, or even possible justifications for the statutory minimum sentence or the sentencing guideline. Not only does the lack of consistency between the statute and guidelines and Congress's asserted intent substantially constitute a violation of due process, but the consequent unequal treatment of different drug traffickers engaged in essentially the same illegal activity conflicts with the equal protection clause.

Though Congress may prescribe a mandatory minimum sentence for a particular offense, the five year minimum for growing 100 or more plants is demonstrably inconsistent with the guideline range adopted as promulgated by the Sentencing Commission using the substantiated equivalency of 100 grams per plant, applied to 100 plants. The guidelines, without other factors, produce a base offense level 16 (for 10 or more kilograms of marijuana). A criminal history Category of I results in

a range of 21–27 months for the possessor of the fruit of 100 plants. While this is consistent with the unsupported equivalency of one kilogram per plant, it is substantially above the entire guideline range of 21–27 months, using the substantiated equivalency of 100 grams per plant both for one convicted of growing 100 plants and one possessing the assumed harvest from 100 plants. Thus, the statutory mandatory minimum is inherently in conflict with the guidelines, also adopted by Congress. If the same person is charged with growing 100 plants, he faces twice the incarceration than if he is charged with possession of the fruit of 100 plants. A prosecutor, by choosing to prosecute the growing of the plants rather than the possession of the harvest from the plants, could more than double the incarceration.

*Conclusion*

In short, the statutory and guideline equivalency of one kilogram per plant, for which there is no factual or rational basis, and the 100 gram equivalency, for which there is a factual and rational foundation, produce conflicting mandated sentences. There is thus an irreconcilable conflict between the statutory and guideline sentence minimums, both adopted by Congress. The use of two equivalencies, one factually unsubstantiated, to differentiate the sentences for growth of under 50 plants and 50 or more plants and to differentiate between growing plants and possessing their harvest, creates a sentencing scheme that is as strikingly inconsistent in the treatment of comparable conduct as to violate both the due process and equal protection clauses.

It is only by finding the one kilogram per plant equivalency to be arbitrary, and thus invalid, that one can remove the discrepancy in the several applications, including to defendant here, of the statutory mandatory minimum and guideline sentence range. Therefore, the five-year minimum sentence offends constitutional principles of equal

---

upon the number of plants, or one based on a single weight equivalency would rationally penalize more heavily a greater degree of drug distribution. The use of two weight equivalenc-

es in the guidelines, derived from the statute, one arbitrary as not factually substantiated, results in sentence differentials which are not logically harmonized.

protection and due process. Accordingly, sentence will be imposed consistent with the guidelines, using the substantiated equivalency.

SO ORDERED.